UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY GREGG, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>BOHEMIAN CLUB, et al.,<br><br>    Defendants. | Case No. 23-cv-02760-AMO<br><br>**ORDER RE MOTIONS TO DISMISS**<br>Re: Dkt. Nos. 34, 35 |

Before the Court are Motions to Dismiss from Defendants Pomella LLC ("Pomella") and Bohemian Club. The Motions are suitable for decision without oral argument. Accordingly, the hearing set for January 25, 2024, is **VACATED**. *See* Civil L.R. 7-1(b). Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the Court hereby **GRANTS** both Motions to Dismiss.

**BACKGROUND**

This is a putative class action involving wage and hour claims. Plaintiffs bring this action against Defendants Monastery Camp, Bohemian Club, and Pomella LLC, alleging they jointly employed Plaintiffs as valets. To properly assess the motions to dismiss, the Court accepts as true and draws from the allegations in the First Amended Complaint (ECF 5, "FAC"). *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

**A.    The Bohemian Grove and the Camps**

The Bohemian Club hosts three of its main annual events to gather members to celebrate the arts at the Bohemian Grove in Monte Rio, California.[1]  FAC ¶¶ 19, 22. While attending events

---

[1] Defendant Bohemian Club describes itself as "a private association focused on the promotion, enjoyment, and celebration of literature, art, music, and drama." ECF 35 at 9.

hosted at the Grove, Bohemian Club members stay at one of "more than 100" different "camps." FAC ¶ 28.

Each camp typically has a "captain" who is in charge of the finances, decision making, and operations of the camp including hiring and firing staff such as valets. FAC ¶¶ 28, 31. The camps "collect hundreds of thousands of dollars in member dues, and hire, fire, pay, and dictate nearly every aspect of their valets' employment." FAC ¶ 31. The camps "are not independent legal entities making their own hiring decision, but a part of a joint venture as designed by Bohemian Club." FAC ¶ 58.

Because Bohemian Club members include high-level executives, famous artists, and prominent government officials, the Bohemian Club "vets" all individuals who may enter the Grove, including the staff at each camp. FAC ¶¶ 33, 41-43. Bohemian Club also imposes rules on attendees, including camp staff. For example, Bohemian Club places restrictions on the use of communal phones and prohibits camp staff from attending the events put on for its members. FAC ¶¶ 48, 51. The Bohemian Club also requires camp staff to wear badges, prohibits the use of personal phones, and limits camp staff to designated areas. FAC ¶¶ 41, 48, 51.

**B.     Monastery Camp**

Defendant Monastery Camp, an unincorporated "association of gentlemen," is one of the more than 100 camps at the Grove. FAC ¶ 29. Monastery Camp is one of the most prestigious and well-known camps at the Grove. FAC ¶ 33. Monastery Camp employed Plaintiff Anthony Gregg as a valet from 2006 to 2022, Plaintiff Shawn Granger as a valet in 2018, and Plaintiff Wallid Saad as a valet from 2015 to 2022. FAC ¶¶ 9-11. William Dawson was the Camp Captain for Monastery and was accordingly in charge of Monastery's finances and its staff. FAC ¶ 34. Monastery Camp utilized the services of Defendant Pomella LLC to run payroll for its staff. FAC ¶¶ 46, 52, 70.

Dawson "directed Plaintiffs to falsify payroll records and to work off-the-clock." FAC ¶ 34. Plaintiff Anthony Gregg instructed other valets to misrepresent the hours they worked. FAC ¶ 74. Gregg directly communicated with Dawson and described the ways Gregg endeavored to intentionally deceive Pomella and Pomella's CEO, Mica Talmor. *Id*. Gregg misled Talmor about

1  the hours Monastery Camp valets worked on several occasions. *See, e.g.*, FAC ¶ 86.

## C. Plaintiffs' Claims and Procedural History

Plaintiffs allege a violation of Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201, et seq, along with various California wage and hour state law claims for failure to pay minimum wage, provide meal periods, provide paid rest breaks, pay wages at termination, provide accurate wage statements, California Unfair Business Practices, and a PAGA claim. *See* FAC. Plaintiffs allege that they worked seven days a week, and approximately 15 hours a day for the duration of the 2019, 2021, and 2022 seasons. FAC ¶ 15.

Monastery Camp answered the FAC. ECF 32. Bohemian Club and Pomella both filed the now-pending Motions to Dismiss. ECF 34, ECF 35.

**DISCUSSION**

## A. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted). A claim is facially plausible when the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679.

3

### B. Joint Employer Allegations

Both Bohemian Club and Pomella argue that Plaintiffs' first six causes of action, all arising under the California Labor Code or the FLSA, fail because Plaintiffs' allegations do not support liability against them as joint employers. To be liable for labor violations under both California and federal law, a defendant must be an employer. *See Martinez v. Combs*, 49 Cal. 4th 35, 49 (2010); *Bonnette v. Cal. Health and Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983), abrogated on other grounds by *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985). "The joint employer doctrine recognizes that 'even where business entities are separate, if they share control of the terms or conditions of an individual's employment, both companies can qualify as employers.'" *Johnson v. Serenity Transp., Inc.*, No. 15-cv-02004-JSC, 2016 WL 270952, at *10 (N.D. Cal. Jan. 22, 2016) (quoting *Guitierrez v. Carter Bros. Sec. Servs., LLC*, 2014 WL 5487793, at *3 (E.D. Cal. Oct. 29, 2014)). "At the pleadings stage, although the 'plaintiff is not required to conclusively establish that defendants were her joint employers . . . [the plaintiff] must at least allege some facts in support of this legal conclusion.'" *Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 942 (N.D. Cal. 2019) (citation omitted). The Court analyzes Plaintiffs claims under California law before doing so under FLSA.

#### 1. Joint Employer Standard Under California Law

To establish a joint employer relationship, a plaintiff must be able to demonstrate that each defendant was able to "(a) exercise control over the wages, hours or working conditions, or (b) to suffer or permit to work, or (c) to engage, thereby creating a common law employment relationship." *Martinez*, 49 Cal. 4th at 64. The test is disjunctive: Plaintiffs need only plead facts sufficient to meet one of these tests. *See id.* The Court considers the sufficiency of the pleading under each of the three tests below.

##### a. Control

The first inquiry is whether, as pleaded, Bohemian Club and/or Pomella exercised control over the wages, hours, or working conditions of Plaintiffs. The California Supreme Court has concluded that unless an entity has the power to hire and fire the workers, that entity will not qualify as a joint employer. *Patterson v. Domino's Pizza, LLC*, 60 Cal. 4th 474, 484-88, 500-03

(2014) (declining to find that Domino's was a joint employer of franchisee's workers, in part because Domino's was unable to hire and fire the workers, and despite Domino's representative's high level of attention to workers and their work product). Here, Plaintiffs have not alleged that Bohemian Club or Pomella had the power to hire or fire Plaintiffs or any other member of the putative class. Plaintiffs also fail to aver that Bohemian Club or Pomella controlled their wages or hours. Though Plaintiffs note that Bohemian Club expressly encouraged the camps to abide by wage and hour laws, Plaintiffs do not allege that Bohemian Club or Pomella influenced the amount or manner in which they were paid. FAC ¶¶ 44, 45. Plaintiffs, to the contrary, only allege that *the camp* had the power to "hire, fire, pay, and dictate nearly every aspect of their valets' employment" (FAC ¶ 31), and they allege that it was a camp captain who proposed to pay them "under the table" (FAC ¶ 80). Further, the FAC does not allege that either Bohemian Club or Pomella controlled when Plaintiffs' workdays began and ended.

Though Plaintiffs allege that "Defendant Bohemian Club exercised substantial, direct, and immediate control over class members' essential terms and conditions of employment," FAC ¶ 77, those allegations are conclusory, fall short of the pleading standards, and need not be accepted as true. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Ultimately, the collective allegations against Bohemian Club and Pomella demonstrate that the two entities were not sufficiently involved in the workers' daily lives to indicate control of working conditions. Plaintiffs' allegations thus fail to establish that Bohemian Club or Pomella were joint employers under the "control" test.

### b. Suffer-or-Permit

Plaintiffs similarly do not allege sufficient facts to suggest Bohemian Club or Pomella were employers under the "suffer-or-permit" test. The basis for suffer-or-permit liability is "the defendant's knowledge of and *failure to prevent* the work from occurring." *Martinez*, 49 Cal. 4th at 70 (emphasis in original). Merely receiving the benefit of the work is insufficient to establish liability as an employer under this test. *See id.*; *see also Futrell v. Payday California, Inc.*, 190 Cal. App. 4th 1419, 1434 (2010) (finding no facts supporting suffer-or-permit employer relationship where no facts showing party had power to cause employee to work or to prevent him

5

from working). Practically, as with the "control" test discussed above, where a party lacks the power to hire, fire, set wages or hours, or tell employees when and where to report to work, the relationship fails the suffer-or-permit test. *See Martinez*, 49 Cal. 4th at 70; *Futrell*, 190 Cal. App. 4th at 1434.

As discussed above, Plaintiffs have not alleged that Bohemian Club or Pomella had the power to control or prevent Plaintiffs from working. Indeed, the FAC shows the opposite. Plaintiffs allege that Bohemian Club and Pomella could not prevent the work from occurring and that Plaintiffs, particularly Gregg, worked with Dawson, the Monastery Camp Captain, to conceal underreporting of hours worked from Pomella as payroll processor. FAC ¶ 74. The allegations in the FAC thus fall short of showing that Bohemian Club and Pomella were joint employers of Plaintiffs under the suffer-or-permit test.

### c. Engage

Finally, Plaintiffs do not allege sufficient facts to show Bohemian Club and Pomella were their employers under the "engage" test. In this context, "to engage" means to create a common law employment relationship. *Martinez*, 49 Cal. 4th at 64-65. A common law employment relationship exists where a party reserves the general right to control the "manner and means" of performing the work at issue. *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 350 (1989). California courts consider several factors when evaluating whether an employer-employee relationship exists at common law, including the right to fire the employee at will and:

> (a) whether the one performing the services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principle or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principle or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee.

*Id.* at 350.

Plaintiffs do not allege that Bohemian Club or Pomella had the right to fire them at will. Instead, Plaintiffs contend that the camps, not Bohemian Club or Pomella, had the authority to

6

"fire, pay, and dictate nearly every aspect of their valets' employment." FAC ¶ 31. Beyond this allegation, the FAC is largely silent as to the factors used to assess a common law employment relationship. Plaintiffs assert that Bohemian Club operated as a "joint venture" with Monastery Camp (FAC ¶ 21, 58), but it does not allege that either Bohemian Club or Pomella directed or supervised the Plaintiffs onsite in Monte Rio. Additionally, Plaintiffs do not claim that Bohemian Club or Pomella set their pay. The Court therefore finds that Plaintiffs fail to allege facts sufficient to establish an employer relationship under the "engage" test. *See Futrell*, 190 Cal. App. 4th at 1435 (finding no common law employment where defendant was unable to hire or fire plaintiff and did not direct or supervise the work).

In sum, Plaintiffs fail to plausibly allege an employment relationship with Bohemian Club or Pomella under any formulation of California law.

### 2. Joint Employer under the FLSA

In the Ninth Circuit, courts look "in particular to four factors" to determine whether a joint employer relationship exists for purposes of the FLSA: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Bonnette*, 704 F.2d at 1470 (internal quotation marks omitted).

Plaintiffs assert in a conclusory manner that the Bohemian Club and its camps, including Monastery, assert "control" over camp staff by way of requiring background checks, adhering to a certain dress code mandated for the entirety of the Grove, and preventing cell phone and social media usage. However, such general rules are not sufficient to establish control as an employer. *See Williams v. Nichols Demos, Inc.*, No. 18-cv-00884-JSW, 2018 WL 11236757 (N.D. Cal. June 20, 2018) (applying the *Bonnette* test, concluding that the facility was not a joint employer despite it issuing the worker a badge, requiring worker to report to the facility at a specific time, as well as adherence to its dress policy, and sign in and out on facility's daily attendance sheet). Plaintiffs' allegations regarding Bohemian Club's general governing standards for its venue, including having an overall dress code and standards for cell phone usage on the premises, are deficient to demonstrate control over their labor sufficient to establish a joint employer relationship.

7

1		Moreover, Plaintiffs have not alleged facts sufficient to establish a joint employer relationship with Bohemian Club or Pomella under any of the *Bonnette* factors. In fact, the FAC alleges the exact opposite – that only Monastery Camp (and Dawson) had the power to hire and fire Monastery Camp staff (FAC ¶ 31); that Monastery Camp supervised when the Monastery Camp staff worked (*id.*); and that Monastery Camp (and Dawson) determined the rate of pay and handled staff payments (*id.* ¶¶ 46, 67-68). It is the camps, like Monastery, that "collect hundreds of thousands of dollars in member dues, and hire, fire, pay, and dictate nearly every aspect of their valets' employment." *Id.* ¶ 31. The FAC does not allege that Bohemian Club or Pomella handle any of these factors. "While [a] plaintiff is not required to conclusively establish that defendants were [their] joint employers at the pleading stage, [the] plaintiff must at least allege some facts in support of this legal conclusion." *Hibbs-Rines v. Seagate Techs., LLC*, No. C 08-05430 SI, 2009 WL 513496, at *5 (N.D. Cal. Mar. 2, 2009) (citation omitted). Here, as under California law, Plaintiffs fail to plausibly allege a joint employer relationship with Bohemian Club or Pomella.

### C.     **Unfair Competition Law**

Plaintiffs' seventh cause of action for violation of California's Unfair Competition Law under Business and Professions Code § 17200, et seq., is completely derivative of Plaintiffs' claims under the California Labor Code. FAC ¶¶ 201-02. "An employer's unlawful employment practices, such as . . . failure to pay wages, may form the basis for a UCL claim" under Section 17200. *Clifford v. Quest Software Inc.*, 38 Cal. App. 5th 745, 749 (2019). Because the FAC fails to state a claim for violation of the California Labor Code against Bohemian Club and Pomella on a joint employer theory, the FAC likewise fails to state a claim for this cause of action against them.

### D.     **Leave to Amend**

Plaintiffs failed to oppose both Bohemian Club and Pomella's Motions to Dismiss due to an oversight by counsel. ECF 54. The Court, finding the unopposed motions meritorious for the reasons discussed above, ordered the parties to submit "further briefing addressing only whether" Plaintiffs could amend the FAC to state claims or "whether amendment would be futile," adding

that those briefs must not be "more than three pages." ECF 57.[2]

Under Federal Rule of Civil Procedure 15(a), leave to amend "shall be freely given when justice so requires." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). When weighing whether to grant leave to amend, a district court considers: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies; (4) prejudice to the opposing party; and (5) futility of the amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). The relevant query at this stage is whether Plaintiffs' amendment would prove futile. "Under futility analysis, [d]ismissal without leave to amend is only proper if it is clear, upon de novo review, that the complaint could not be saved by any amendment." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (internal quotation marks and citation omitted). A court should permit amendment "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez*, 203 F.3d at 1130 (internal quotation marks and citation omitted). Where a plaintiff fails to provide new facts that could cure deficiencies, it is proper to deny leave to amend. *Krainski*, 616 F.3d at 972 (affirming decision to deny leave to amend where plaintiff provided "no new facts that she would include in her complaint to overcome its shortcomings").

Both Bohemian Club and Pomella argue that further amendment of the allegations against them would prove futile because Plaintiffs cannot offer any new allegations that would support liability against them as joint employers. The Court agrees. Plaintiffs' supplemental briefing fails to identify new facts they would include in an amended pleading to support joint employer liability against Bohemian Club or Pomella. *See* ECF 60. Plaintiffs instead merely repeat facts already alleged in the FAC. For example, Plaintiffs again state that "Bohemian Club controlled

---

[2] The Court earlier admonished Plaintiffs to abide by the Court's instructions:
> Contrary to the Court's direction, ECF 53, Plaintiffs included argument and submitted evidence going to the merits of Defendants' motions. ECF 54 and ECF 54-1. Plaintiffs' inclusion of such argument and materials was specifically disallowed. Counsel is advised to heed the Court instructions or face monetary or other appropriate sanctions.

ECF 57 at 1, n.1. Plaintiffs' submissions at ECF 60 again reached beyond the limited scope of the Court's instructions. In addition to the briefing, Plaintiffs submitted three declarations and 15 exhibits. The Court reviewed and considered these materials, to the extent proper. Nevertheless, the Court again cautions Plaintiffs' counsel that failure to comply with the Court's instructions may result in sanctions.

the hiring, firing, and even compensation for Plaintiffs' employment (e.g., prohibiting valets from accepting tips or possessing cell phones)," and they imply Bohemian Club had control over hiring based on its policy of requiring background checks for camp staff. ECF 60 at 2. These allegations are not new, and they do not establish an employment relationship. *See, e.g.*, FAC ¶¶ 41-43; *cf. Williams*, 2018 WL 11236757, at *5. Plaintiffs' allegation concerning tips is similarly already in the FAC. FAC ¶ 50 ("Defendant Bohemian Club's Rules prohibit class members from accepting any compensation in the form of tips."). Plaintiffs fail to provide any argument or legal support for the premise that a general policy prohibiting tipping of staff constitutes a determination of the rate or method of compensation. *See Lesnik*, 374 F. Supp. 3d at 947 ("courts have circumscribed" joint employment "by denying employer liability for entities that may be able to influence the treatment of employees but lack the authority to directly control their wages, hours or conditions.").

Plaintiffs additionally allege that Bohemian Club was their joint employer because Bohemian Club "previously paid all three Plaintiff [sic] under a prior class settlement because camp valets like Plaintiffs were already included in a class definition as Bohemian Club employees in *Ulucan et al. v. Bohemian Club*." ECF 60 at 2 (referring to Sonoma Sup. Ct., Case No. SCV-268056). In support of this premise, Plaintiff Shawn Granger submits a declaration in which he states that he received payment as part of the class settlement, and he appends a copy of the initial class notice in *Ulucan*. Granger Decl. ¶¶ 4-5, Ex. L (ECF 60-3 at 2, 6-10). Bohemian Club presents conflicting evidence that Plaintiffs were not class members in *Ulucan*. *See* Nabity Decl. ¶¶ 2-10 (ECF 62-1); & Ex. A (ECF 62-1 at 7, Declaration of Desirae Burton of Simpluris, Inc., *Ulucan* settlement administrator). Neither the declarations from Plaintiffs nor the declarations from Bohemian Club are properly considered by the Court because "district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)," except for judicially noticed materials or materials incorporated by reference. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). To the extent Plaintiffs' supplemental brief suggests that they can state a claim against Bohemian Club because they were included in the

1   settlement class (ECF 60 at 3), it falls short. Plaintiffs do not allege that the *Ulucan* court found

2   an employment relationship between Bohemian Club and the putative class as a matter of law, and

3   Plaintiffs fail to offer additional facts in support of the premise that Bohemian Club operated as

4   their employer.

5       In sum, Plaintiffs have not advanced any additional facts they might allege to establish that

6   Bohemian Club and Pomella can be held liable as joint employers along with Monastery Camp.

7   Plaintiffs accordingly fail to persuade the Court that amendment would not prove futile. The

8   Court grants dismissal of these two Defendants without leave to amend, and the Court therefore

9   does not reach Bohemian Club's alternative motion to dismiss for failure to join a necessary party

10  under Rule 12(b)(7) or its alternative motion to strike class allegations under Rule 12(f).

## CONCLUSION

For the reasons stated above, the Court hereby **GRANTS** the Motions to Dismiss for failure to state a claim. Plaintiffs have failed to allege sufficient facts to establish joint employer liability against either Bohemian Club or Pomella, and Plaintiffs fail to identify any new, non-frivolous facts that could remedy the shortcomings regarding joint employer liability. Accordingly, Bohemian Club and Pomella are **DISMISSED WITH PREJUDICE**. Plaintiffs may file an amended pleading omitting Bohemian Club and Pomella within 28 days from the date of this order. No new claims or Defendants may be added without leave of Court or stipulation of Monastery Camp.

**IT IS SO ORDERED.**

Dated: January 19, 2024

*[signature]*

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

11