Anthony J. Nunes (SBN 290224)
Nunes Law Group, APC
15260 Ventura Blvd, Suite 1200
Sherman Oaks, CA 91403
Telephone: (855) 422-5529
tony@nunesworkerrightslaw.com

Attorneys for Plaintiffs ANTHONY GREGG, SHAWN GRANGER, and
WALLID SAAD, on behalf of themselves and all others similarly situated

## UNITED STATE DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY GREGG, SHAWN GRANGER, and WALLID SAAD, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MONASTERY CAMP, WILLIAM DAWSON, RICHARD DEWEY, MICHAEL LAHORAGUE, and DOES 1-10,<br><br>Defendants. | Case No. 3:23-CV-02760<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>1. Failure to Pay Minimum Wage<br>2. Violation of the Fair Labor Standards Act ("FLSA," 29 U.S.C. 201, et seq.)<br>3. Failure to Provide Meal Periods<br>4. Failure to Provide Paid Rest Breaks<br>5. Failure to Pay All Wages at Termination (Labor Code Section 201-203)<br>6. Failure to Provide Accurate Wage Statements<br>7. Unfair Business Practices<br>8. Violation of Labor Code Section 2699 (PAGA)<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs ANTHONY GREGG, SHAWN GRANGER, and WALLID SAAD ("Plaintiffs"), on behalf of themselves and all others similarly situated allege, causes of action against Defendants, as follows:

## I.

## **INTRODUCTION**

1.      Defendants violated the U.S. Fair Labor Standards Act, California's Labor Code, and California Industrial Welfare Commission ("IWC") Wage Order No. 5-2001, as amended ("Wage Order No. 5") which includes:

   a.      Failing to pay its employees minimum wage as required by federal and California law for every hour worked;

   b.      Failing to pay its employees proper overtime wages as required by federal and California law for every hour worked'

   c.      Failing to pay its employees premium wages for missed meal periods;

   d.      Failing to pay its employees premium wages for missed rest periods;

   e.      Failing to maintain accurate employment records for its employees in California; and

   f.      Failing to pay its employees amounts owed at the end of employment.

2.      Plaintiffs seek unpaid wages and penalties for California and federal Labor Code violations.

## II.

## JURISDICTION

3.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 206(a)(1).

4.      Federal jurisdiction is proper due to Defendants' violations of the minimum wage provision of the U.S. Fair Labor Standards Act.  29 U.S.C. § 206(a)(1).  As described herein, Plaintiffs allege Defendants failed to pay wages for off-the-clock work.

5.      Plaintiffs allege that Defendants systematically violate the Fair Labor Standards Act by failing to provide Plaintiffs minimum wage.

6.      Venue lies within the Northern California District because Monastery Camp is headquartered in the Northern District, in Sonoma County.

## III.

## PARTIES

### Plaintiffs

7.      Plaintiffs were employed by Defendants in Northern California as "Valets" and provided Defendants' members and guests with food, drinks, and hospitality services.

8.     Plaintiff Anthony Gregg was employed as a "Valet" for Defendant Monastery Camp and its Camp Captains from approximately June 2006 to July 2022.

9.     Plaintiff Shawn Granger was employed as a "Valet" for three of Defendant Monastery Camp and its Camp Captains from June 2010 to July 2022. He started at the "Last Chance" camp in 2010.  Then moved to the "Camels Camp."  In 2018, Plaintiff Granger began working at the Monastery Camp.

10.     Plaintiff Wallid Saad was employed as a "Valet" for multiple Bohemian Club camps.  Plaintiff Saad switched camps to work at the Monastery Camp and worked there from 2015 to 2022.

11.     For the purposes of this Complaint, "off-the-clock" work means work performed that was not reported or paid on any timesheets.  Consequently, this work was either left unpaid or only partially paid via "under-the-table" directly from Monastery Camp.

12.     For the purposes of this Complaint, "under-the-table" is defined as the payments Plaintiffs receive directly from their Camp.

13.     Defendant's under-the-table payments were not subject to payroll taxes/deductions or worker's compensation insurance.

14.     Plaintiffs allege that valets worked 7 days a week, and approximately 15+ hours a day for the duration of the 2019, 2021, and 2022 encampments.

15.     In 2022, Plaintiff Saad alleges that he and another Monastery Camp valet worked entirely off-the-clock and received 100% of their pay under-the-table.

16.     Plaintiffs were told by Defendants' Camp Captains not to record their actual hours work, but to only report 8 hours per day, up to a maximum of 40 hours per week on their timesheets.

17.     Plaintiffs would then be paid under-the-table from Defendant Monastery Camp for some, but not all of the remainder of their owned wages.

**Defendants**

18.     Plaintiffs allege that Defendant Monastery Camp (hereinafter "Defendant," "Monastery Camp," or "Camp") operates at "Bohemian Grove" in Monte Rio, California.

19.     Plaintiffs allege that Defendant William "Bill" Dawson (hereinafter "Defendant," "Dawson" or "Captain") is a former Bohemian Club Treasurer and Biotech Chief Financial Officer.

20.     Defendant Dawson's default email signature included the same PO Box that is listed on the Monastery Camp's checks he signed.  Defendant Dawson was Monastery Camp's Captain until 2022.

21.     Plaintiffs allege that Defendant Richard "Dick" Dewey (hereinafter "Defendant," "Dewey" or "Captain") is the Chairman and Founder of a large real

estate development company known as Dewey Land Company, Inc.  Dewey has been Defendant Monastery Camp's Captain throughout the liability period.

22.     Plaintiffs allege that Defendant Michael LaHorague (hereinafter "Defendant," "LaHorague" or "Captain") was the Founder of Seaview Ventures, LLC, and President of Carmel Partners, which appear to be a large real estate development firm.

23.     Defendant LaHorague uses as an address the same PO Box as the Camp's checks.  LaHorague has been Defendant Monastery Camp's Captain since 2022 when Defendant Captain Dawson moved to another Bohemian Club camp.

24.     On information and belief, all three individual Defendants were Camp Captains and successful businessmen.  Plaintiffs alleges they have owned companies and are aware that California's Labor Code requires employers to pay for all hours worked and pay for payroll taxes.

25.     On information and belief, all three individual Defendants were at Monastery Camp in June 2023, and aware of this wage action against them.

26.     Plaintiffs allege each individual Defendant used the Camp's unincorporated status to shield themselves from liability for unpaid wages.

27.     Defendant Monastery Camp is an unincorporated employer within the Bohemian Grove campground and typically losses money with each event.

Despite running a significant operation with approximately five employees working fulltime.

28.    Plaintiffs allege that Monastery Camp typically operates at a loss. Being a Camp Captain is unpaid, but is very prestigious.  It's a position that confers great respect among a class of America's most wealthy and powerful businessmen, entertainers, athletes, and government officials.

29.    Plaintiffs received "under-the-table" checks signed by Monastery Camp's Captains Dawson and LaHorague.

30.    Defendants Dawson, Dewey, and LaHorague personally and directly told Plaintiffs to falsify payroll records and to work off-the-clock.

31.    Plaintiff allege that in 2019, when after class action lawsuit led Bohemian Club to require all camps to either use "Bolt Staffing" for its valet or submit to Bohemian Club audits of their employment practices, it was Defendant Dawson and Defendant Dewey that determined that Monastery Camp would find its own solution.

32.    Defendants Dawson, Dewey, and LaHorague in their individual capacity as Camp Captains caused the alleged wage violations and directed valets to circumvent the Bohemian Club's effort to avoid future wage class actions.

33.     Defendant Dawson determined that Bolt Staffing was "too expensive" and a "non-starter," so Defendant Monastery Camp would have to explore other options to keep labor costs low.

34.     In April 2019, Defendant Captain Dawson brought in Pomella LLC to process the Monastery Camp's payroll after the automobile racing company executive initial and then declined to run the Camp's payroll.  Dawson made jokes about how Monastery Camp could be in big trouble it's pay system was discovered.  Plaintiffs understood those jokes to mean that if the part payroll, part-check system was discovered, it would lead to another class action lawsuit.

35.     Plaintiffs were directed by all three Camp Captains Defendants to submit false timesheets to Pomella showing 8.0 "regular" hours, but to not include any overtime.  These timesheets nearly always listed exactly 8.0 hours per day for 5 days a week.

36.     Most years Defendant Monastery Camp operates at a significant loss.  Plaintiffs allege that the goal of the Monastery Camp is not to make a profit, but to benefit Bohemian Club and maintain its elite membership.

37.     Plaintiffs allege that when a Monastery Camp member has a guest at their camp, the Camp charges a "guest fee" (approximately $900 for a weekend day, $250 for weekdays).  This fee is charged by the Camp, but 100% goes to Bohemian Club.

38.     The Bohemian Grove campus is split into more than 100 camps. Each camp has typically one or two "Camp Captains" that are in charge of food, drinks, accommodations, and finances at their camp.

39.     Plaintiffs allege that Defendant Monastery Camp is not incorporated as a business, but as an unincorporated employer run by its Camp Captains Defendants Dawson, Dewey, and LaHorague.

40.     Plaintiffs allege on information and belief that Defendant Monastery Camp is not incorporated as a business or legal entity, despite the Camp's reliance on approximately 4-5 valet employees per encampment.

41.     Plaintiffs and other "valets" work for unincorporated camps like Monastery Camp.  These unincorporated camps collect hundreds of thousands of dollars in member dues, and hire, fire, pay, and dictate nearly every aspect of their valets' employment.

42.     Defendant Monastery Camp is one of the most prestigious and well-known camps at Bohemian Grove.  Monastery Camp members include executives of Fortune 500 companies and prominent government officials.

43.     Defendant Dawson and Defendant Dewey as Captains of Monastery Camp, personally directed Plaintiffs to falsify payroll records and to work off-the-clock.

44.     Due to the high-profile guests and potential for public scrutiny, Defendant carefully monitors and places conditions on who is employed at each camp.

45.     Defendant Monastery Camp worked with Pomella LLC to operate two separate methods of paying valets.

46.     Plaintiffs were directed by Defendant Dawson to submit false timesheets to Pomella showing 8.0 "regular" hours, but to not include any overtime.  These timesheets nearly always listed exactly 8.0 hours per day for 5 days a week.

47.     Plaintiffs' counsel made several attempts to request information from attorneys for Monastery Camp regarding the name of any legal entity they contend would be responsible for any alleged labor law violations at the Monastery Camp.

48.     After Plaintiffs served employment record requests, Plaintiffs allege on information and belief that Captain Dewey who reached out a well-known former government official to call Plaintiff Gregg regarding his wage claims. Similarly, Defendant Dewey himself called Plaintiff Saad in an apparent effort by these powerful figures to convince Plaintiffs to drop their claims.

49.     Counsel for Monastery Camp denied that Plaintiffs worked for them and did not provide any information regarding who they contend employed Plaintiffs.

50.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued here in as DOES 1 through 10, inclusive, are currently unknown to Plaintiffs, who therefore sue Defendants by such fictitious names.  Plaintiffs are informed and believe, and based thereon allege, that Defendants designated herein as DOE(S) are legally responsible in some manner for the unlawful acts referred to herein.

51.     Plaintiffs will seek leave of court to amend this complaint to reflect the true names and capacities of the Defendants designated hereinafter as DOE(S) when such identities become known.

52.     Plaintiffs are informed and believe that at all relevant times each Defendant, directly or indirectly, or through agents or other persons, employed Plaintiffs, and exercised control over the wages, hours, and working conditions of Plaintiffs.

53.     Plaintiffs are informed and believe and thereon allege that, at all relevant times, each Defendant was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other

Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to other Defendants so as to be liable for their conduct with respect to the matters alleged below.

54.     Plaintiffs are informed and believe and thereon allege that each Defendant acted pursuant to and within the scope of the relationships alleged above, that each Defendant knew or should have known about, authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all other Defendants.

## IV.
## GENERAL ALLEGATIONS

55.     In 2018, Defendant Monastery Camp and its Camp Captains had no viable option for processing its payroll.  Consequently, every valet was paid under-the-table from Monastery Camp.

56.     In 2019, Monastery Camp searched for a company to hire and process payroll for their valets.

57.     Defendant Dawson reached out to a camp member who owns an automobile racing company.  Plaintiffs allege Defendant Dawson asked the owner if he could process the camp's payroll through the racing company's payroll system.  Initially, the automobile racing company's owner agreed to hire the employes and run the payroll, but later declined.

58.     In April 2019, Defendant Dawson brought in Pomella to process the Monastery Camp's payroll, after the automobile racing company decline to run the camp's payroll.

59.     Defendants were aware that Plaintiffs were working off-the-clock.

60.     In 2020, the Camp was cancelled due to COVID-19.

61.     Going into 2021 summer events, Defendants continually worked together to come up with methods to avoid paying payroll taxes and overtime.

62.     Bohemian Club's General Manager asked Defendant Dawson to provide payroll forms for each valet.

63.     Additionally, on May 29, 2021, Plaintiff Gregg texted a camp captain that, "I just don't want to lose valets mid session because they are working so much."  The Defendant Camp Captain replied stating that all pay for one valet would be "under the table."

64.     Defendant Monastery Camp Captains are aware that valets are working almost nonstop.  A 2021 Guide to the Monastery Camp explains how the camp works and includes highly irreverent, comical biographies of each Camp guest.  The Guide states that "[Plaintiff]'s job is to feed us morning, noon and night."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

65.    The Guide requests that guests do not further burden overworked staff by asking them to do personal favors, explaining that "[o]ur staff will be on duty from early in the morning through the post-dinner clean up."

66.    The 2021 camp was particularly tough on valets.  During the Summer Encampment, due to understaffing all three Plaintiffs allege they were working 16+ hours per day for the duration of the 14-day camp.

67.    Yet during this 2021 Summer Encampment, Plaintiffs reported exactly 8.0 hours per day on their timesheets, no overtime, and reported no more than 40 hours per week.  For example, Plaintiff Granger reported exactly 8.0 hours per day on July 5, 8, 9, 10, 11, 12, 14, 15, 16, 17, and 18.

68.    In 2021, each Plaintiff typically reported identical start times as each other, exactly 60-minute lunch times, and the same end time each day.

69.    Plaintiffs allege that Defendants' deliberate understaffing led to a constant, non-stop workload, and prevented valets from having the ability to take meal periods or rest breaks.

70.    In 2022, despite multiple warnings from Plaintiffs, Defendants remained understaffed and overworked.  For example, for the Spring Jinx "Burgundy Lunch" on June 9, 2023, four valets worked nonstop for approximately 18 hours providing a two-course lunch and dinner to 90 guests.

71.     Plaintiffs allege that Defendants' corporate policies, procedures, and uniform understaffing, were either written or institutionalized into each Defendant's labor practices, such that Plaintiffs were not able to, or permitted to, take timely rest breaks or lunch periods, pursuant to the Labor Code, Industrial Welfare Commission Wage Order 5-2001, and other applicable Wage Orders.

72.     Plaintiffs allege Defendants implemented and maintained a policy to pay non-exempt valets less than the applicable minimum wage by failing to pay valets for all hours worked.  Defendants were aware of the fact that under their system, Plaintiffs regularly worked unpaid hours and/or worked for compensation at less than the applicable minimum wage.

73.     Plaintiffs allege Defendants also failed to provide overtime wages earned for all hours worked by Plaintiffs in excess of eight hours per day and/or forty hours per week.  If any overtime compensation was received, it was for fewer than actual overtime hours worked.

74.     Plaintiffs allege that in order to meet Defendants' workload requirements, they typically worked through both meal periods and rest breaks.

75.     Plaintiffs allege Defendants also failed to provide Plaintiffs with the required meal periods when they worked more than five hours in a day; and Defendants failed to pay Plaintiffs a one-hour premium wage in lieu thereof.

76.     Plaintiffs allege Defendants failed to provide Plaintiffs with timely and accurate wage statements.

77.     Plaintiffs allege Defendants did not maintain adequate records pertaining to when Plaintiffs began and finished each work period; meal/rest breaks; hours worked per day; hours worked per pay period; and applicable rates of pay for all regular hours and overtime.

78.     Plaintiffs allege that Defendants have maintained and continue to maintain uniform practices and procedures which are inconsistent with state and federal law.

79.     Plaintiffs allege that Defendants engage in uniform policies and conduct, as alleged herein resulting in violations of Labor Code §§ 201, 202, 203, 204, 226, 226.7, 510, 1194, and 2750.5.

80.     Plaintiffs bring this action pursuant to Business and Professions Code §§ 17200-17208, seeking injunctive relief and restitution of all benefits obtained by Defendants by engaging in the unlawful conduct complained herein.

81.     Defendants' valets do not/did not receive meal breaks, or rest breaks as required by the California Labor Code and Wage Order No. 5.

82.     Defendants' valets did not receive accurate wage statements.

83.     Plaintiffs' counsel served by email and certified mail requests for employment records for Plaintiffs pursuant to California Labor Code section 226.

84.     Plaintiffs Anthony Gregg, Shawn Granger, and Wallid Saad filed a Private Attorney General Act ("PAGA") Notice with the California Labor and Workforce Development Agency (LWDA), and served a copy on Defendant Monastery Camp by certified U.S. Mail.

**V.**

## CAUSES OF ACTION

### First Cause of Action

**Failure to Pay Minimum Wage**
**(Labor Code §§ 1182.12, 1194, 1197 and 1197.1, IWC Wage Orders, and the Fair Labor Standards Act 29 U.S.C. 201, et seq.)**

85.     Plaintiffs incorporate all previous paragraphs of this Complaint as though fully set forth herein.

86.     At all relevant times, the Industrial Welfare Commission (IWC) Wage Orders contained in Title 8 of the Code of Regulations ("Wage Orders") applied to Plaintiffs in their capacity as employees of Defendants.  The Wage Orders and California law provided, among other things, that employees must receive minimum wage earnings for all hours worked.

87.     Plaintiffs allege Defendants implemented and maintained policies to pay Plaintiffs less than the applicable minimum wage by failing to pay valets for hours worked.

88.     All Defendants were aware of the fact that under their system, Plaintiffs regularly worked unpaid hours and/or worked for compensation at less than the applicable minimum wage.

89.     During the liability period, Defendants have routinely failed to pay Plaintiffs the minimum wage required under California and federal law. Plaintiffs' timecards and pay stubs did not list their actual regular and overtime hours worked.

90.     Plaintiffs were directed by Defendant Dawson to submit false timesheets to Pomella showing 8.0 "regular" hours, but to not include any overtime.  These timesheets nearly always listed exactly 8.0 hours per day for 5 days a week.

91.     Plaintiffs allege Defendants also failed to provide overtime wages earned for all hours worked by Plaintiffs in excess of eight hours per day and/or forty hours per week.  Where overtime compensation was received at all, it was for fewer than actual overtime hours worked and was paid at less than the amount required by California law.

92.     Defendant Monastery Camp Captains, members, and guests are aware that valets are working essentially nonstop for 15 to 18 hours at a time.

93.     Due to pent up demand, after the 2020 encampment was cancelled due to Covid-19, the 2021 camp was particularly difficult on Plaintiffs.

94.     During the 2021 Summer Encampment event, due to understaffing all three Plaintiffs allege they were working 16+ hours per day for the duration of the 14-day Summer Encampment.

95.     Plaintiffs were told by Defendants' Camp Captains not to record their actual hours work, but to only report 8 hours per day, up to a maximum of 40 hours per week on their timesheets.

96.     Plaintiffs would then be paid under-the-table from Defendant Monastery Camp for part of the remainder of their owned wages.

97.     Labor Code Section 1194 provides in pertinent part: "any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

98.     Labor Code Section 1197 provides that the "minimum wage for employees fixed by the commission or by any applicable state or local law, is the minimum wage to be paid to employees, and the payment of a lower wage than the minimum so fixed is unlawful."

99.     Defendants violated California Labor Code sections 1182.12, 1194, 1197, 1197.1 and the applicable Wage Order, Wage Order No. 5, by willfully failing to pay all minimum wages due to Plaintiffs.

100.   Plaintiffs seek all actual, consequential and incidental losses and damages, including, unpaid minimum wages, interest thereon, attorneys' fees, and costs.

101.   In addition to the above-amounts, Plaintiffs will seek to recover one hundred dollars ($100) for each underpaid employee for each pay period for which the employee is underpaid for any initial violation that is intentionally committed, and two hundred fifty dollars ($250) for each subsequent violation for the same specific offense, for each underpaid employee for each pay period for which the employee is underpaid regardless of whether the initial violation is intentionally committed.

## Second Cause of Action

### Violations of the Fair Labor Standards Act ("FLSA," 29 U.S.C. 201, *et seq.*)

102.   Plaintiffs incorporate all paragraphs of this Complaint as though fully set forth herein.

103.   Plaintiffs are informed and believe, and thereon alleges, that Defendants have required Plaintiffs as part of their employment, to work without receiving the minimum wage for all hours worked, under 29 U.S.C. § 206(a). That section provides the following: "Every employer shall pay to each of their employees who in any workweek is engaged in commerce or in the production of

goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the [minimum wage]."

104.   Plaintiffs are informed and believe, and thereon alleges that Defendants have required Plaintiffs as part of their employment, to work without compensation.

105.   Plaintiffs allege Defendants implemented and maintained policies to pay non-exempt valets less than the applicable minimum wage by failing to pay valets for hours worked.

106.   All Defendants were aware of the fact that under their system, Plaintiffs regularly worked unpaid hours and/or worked for compensation at less than the applicable minimum wage.

107.   During the liability period, Defendants have routinely failed to pay Plaintiffs the minimum wage required under California and federal law. Plaintiffs' timecards and pay stubs did not list their actual regular and overtime hours worked.

108.   Plaintiffs were directed by Defendant Dawson to submit false timesheets to Pomella showing 8.0 "regular" hours, but to not include any overtime.  These timesheets nearly always listed exactly 8.0 hours per day for 5 days a week.

109.    Plaintiffs allege Defendants also failed to provide overtime wages earned for all hours worked by Plaintiffs in excess of eight hours per day and/or forty hours per week.  Where overtime compensation was received at all, it was for fewer than actual overtime hours worked and was paid at less than the amount required by California law.

110.    Monastery Camp Captains, members, and guests were aware that Plaintiffs were working essentially nonstop for 15 to 18 hours at a time.

111.    Due to pent up demand, after the 2020 encampment was cancelled due to Covid-19, the 2021 camp was particularly difficult on Plaintiffs.

112.    During the 2021 Summer Encampment event, due to understaffing all three Plaintiffs allege they were working 16+ hours per day for the duration of the 14-day Summer Encampment.

113.    Plaintiffs typically reported exactly 8.0 hours per day on their timesheets, no overtime, and reported no more than 40 hours per week.

114.    Plaintiffs were told by Defendant Monastery Camp's Captains not to record their actual hours work, but to only report 8 hours per day, up to a maximum of 40 hours per week on their timesheets for Pomella.

115.    Plaintiffs would then be paid under-the-table from Defendant Monastery Camp for part of the remainder of their owned wages.

116.    Plaintiffs allege that Defendant Monastery Camp systematically violates the Fair Labor Standards Act by failing to provide Plaintiffs with minimum wage for all hours worked.

117.    Defendant's violations of the FLSA were willful and are ongoing.

118.    As a result of Defendants' unlawful conduct, Plaintiffs have suffered damages as set forth herein.

119.    As a result of the foregoing, Plaintiffs seek judgment against Defendants for all unpaid wages owed by Defendants to Plaintiffs, pursuant to 29 U.S.C. §§ 206 and 207, together with an award of an additional equal amount as liquidated damages, and costs, interests, and reasonable attorneys' fees, pursuant to, *inter alia*, 29 U.S.C. § 216(b).

## **Third Cause of Action**

### **Failure to Provide Meal Periods**
### **(Labor Code §§ 226.7 and 512)**

120.    Plaintiffs incorporate all previous paragraphs of this Complaint as though fully set forth herein.

121.    Throughout the period applicable to this cause of action, California law, as set forth in relevant part by the Industrial Welfare Commission Wage Order No. 5 at section (11), provided as follows:

> i.    No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes

ii.   If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the meal period is not provided.

122.   Labor Code Section 512 states that an "employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes" if and when such employees work more than 5 hours in any given workday.  Labor Code Section 512 further requires two 30 -minute duty-free meal periods when an employee works more than 10 hours in any given workday.

123.   Labor Code section 226.7 requires payment of one (1) hour of pay in lieu of each meal periods not provided by the employer.

124.   Throughout the period applicable to this cause of action, Defendants failed to consistently allow and provide one or more duty-free 30-minute meal periods in violation of Labor Code section 510 and Wage Order No. 5, as required by California law.

125.   Plaintiffs allege that Defendants' deliberate understaffing led to a constant, non-stop workload.

126.   Plaintiffs allege that the non-stop work prevented valets from having the ability to take meal periods or rest breaks.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

127.   Despite multiple warnings from Plaintiffs, Defendants remained understaffed, and working abundant hours off-the-clock without meal periods or rest breaks.

128.   Plaintiffs allege that in order to meet Defendants' workload requirements, they typically worked through both meal periods and rest breaks.

129.   Plaintiffs allege Defendants also failed to provide Plaintiffs with the required meal periods when they worked more than five hours in a day; and Defendants failed to pay Plaintiffs a one-hour premium wage in lieu thereof.

130.   Plaintiffs allege that Defendants' corporate policies, procedures, and uniform understaffing, were either written or institutionalized into each Defendant's labor practices, such that Plaintiffs were not able to, or permitted to, take timely rest breaks or lunch periods, pursuant to the Labor Code, Industrial Welfare Commission Wage Order 5-2001, and other applicable Wage Orders.

131.   Plaintiffs allege Defendants implemented and maintained a policy to pay non-exempt valets less than the applicable minimum wage by failing to pay valets for all hours worked.  Defendants were aware of the fact that under their system, Plaintiffs regularly worked unpaid hours and/or worked for compensation at less than the applicable minimum wage.

132.   Plaintiffs allege Defendants also failed to provide overtime wages earned for all hours worked by Plaintiffs in excess of eight hours per day and/or

forty hours per week.  Where overtime compensation was received at all, it was

for fewer than actual overtime hours worked and was paid at less than the amount

required by California law.

133.   By virtue of this unlawful conduct, Plaintiffs are entitled to

compensation as stated above, plus interest, attorneys' fees, costs and other

applicable relief.

134.   Throughout the period applicable to this cause of action, Defendants

required Plaintiffs to work during meal periods mandated by the applicable orders

of the Industrial Welfare Commission.  Therefore, Plaintiffs are entitled to be

paid as stated in Labor Code section 226.7, plus interest, attorneys' fees, costs and

other applicable relief.

135.   On information and belief, Plaintiffs allege that they did not

voluntarily or willfully waive rest and/or meal periods and were regularly

required to work through meal periods.  Defendants failed to meet the

requirements for lawful on-duty meal periods and/or instituted a course of

conduct that created a working environment in which non-exempt employees

were incapable of taking rest and/or meal periods.  As such, non-exempt

employees were intimidated or coerced into waiving meal periods, and any

written waivers were obtained without full disclosure and are thus involuntarily

and without consent.

136.   Plaintiffs request relief as described herein.

## Fourth Cause of Action

### Failure to Provide Rest Breaks
### (Labor Code §§ 226.7 and 512)

137.   Plaintiffs incorporate all previous paragraphs of this Complaint as though fully set forth herein.

138.   Wage Order No. 5, Section 12, requires each employer to provide each of its employees with at least one rest period of 10-minutes rest time for each 4 hours, or major fraction thereof, that each such employee works during each workday.

139.   Plaintiffs allege that Defendants' deliberate understaffing led to a constant, non-stop workload.

140.   Plaintiffs allege that the non-stop work prevented valets from having the ability to take meal periods or rest breaks.

141.   Despite multiple warnings from Plaintiffs, Defendants remained understaffed, and working abundant hours off-the-clock without meal periods or rest breaks.

142.   Plaintiffs allege that in order to meet Defendants' workload requirements, they typically worked through both meal periods and rest breaks.

143.   Plaintiffs allege Defendants also failed to provide Plaintiffs with the required meal periods when they worked more than five hours in a day; and Defendants failed to pay Plaintiffs a one-hour premium wage in lieu thereof.

144.   Labor Code Section 226.7 provides that if an employer fails to provide an employee with a rest period in accordance with Wage Order No. 5, the employer must pay such employee(s) one additional hour of pay at the employee's regular rate of pay for each day that such a rest period was not provided.

145.   By their failure to provide rest periods for every four (4) hours or major fraction thereof worked per workday by Plaintiffs, and failing to provide one (1) hour's pay in lieu thereof, as alleged above and herein, Defendants willfully violated the provisions of Labor Code sections 226.7 and IWC Wage Orders at section (12).

146.   By failing to keep adequate time records required by sections 226 and 1174(d) of the Labor Code and IWC Wage Order at section (7), Defendants have injured Plaintiffs, and made it difficult to calculate the unpaid rest and meal period compensation due to Plaintiffs.

147.   On information and belief, Plaintiffs allege that Defendants' failure to maintain accurate records was willful.

148.   As a result of the unlawful acts of Defendants, Plaintiffs seek to represent have been deprived of premium wages in amounts to be determined at trial, and are entitled to an accounting and recovery of such amounts, plus interest and penalties thereon, attorneys' fees, and costs, under the Labor Code and the applicable IWC Wage Orders.

### Fifth Cause of Action

### Failure to Pay All Wages at Termination
### (Labor Code §§ 201- 203)

149.   Plaintiffs incorporate all previous paragraphs of this Complaint as though fully set forth herein.

150.   Plaintiffs quit or were discharged from their employment within the statute of limitations period applicable to this cause of action.

151.   Defendants failed to pay said employees, without abatement, all wages (as defined by applicable California law) within the time required by applicable California law.  Defendants' failure to pay said wages within the required time was willful within the meaning of Labor Code section 203.

152.   As of the filing of the Complaint, Defendants failed to timely pay wages due, and Plaintiffs are owed penalties pursuant to Labor Code sections 201, 202, and 203.

153.   Therefore, each of these employees is entitled to one day's wages for each day he or she was not timely paid all said wages due, up to a maximum of

thirty days' wages for each employee.  Because employees were never paid the wages to which they were entitled, each employee is entitled to thirty days' wages.

### **Sixth Cause of Action**

**Failure to Provide Accurate Wage Statements**
**(Labor Code §§ 226(b), 1174, 1175)**

154.   Plaintiffs incorporate all previous paragraphs of this Complaint as though fully set forth herein.

155.   Labor Code section 1174(d) requires that every employee maintain "payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate aid to, employees employed" in California.

156.   Wage Order No. 5, Section 7 requires every employer in California to "keep accurate information with respect to each employee including," . . . "[t]ime records showing when the employee begins and ends each work period. Meal periods, split shift intervals and total daily hours worked shall also be recorded."

157.   Plaintiffs typically reported intentionally false, but identical start times as each other, exactly 60-minute lunch times, and the same end time each day.

158.   Defendant Monastery Camp operated under two separate methods of paying employees.

159.   Plaintiffs were directed by Defendant Dawson to submit false timesheets to Pomella showing 8.0 "regular" hours, but to not include any overtime.  These timesheets nearly always listed exactly 8.0 hours per day for 5 days a week.

160.   Plaintiffs worked unpaid hours for Defendants as a part of systematic pattern of Defendants' failing to pay employees for all hours worked.

161.   Plaintiffs are informed and believe and upon that basis allege, that Defendants have failed to maintain accurate records in compliance with Labor Code section 1174 and/or Wage Order No. 5 for Plaintiffs.  Pursuant to Labor Code Section 1174.5, Plaintiffs are entitled to each collect a civil penalty from Defendants in the amount of $500.

162.   Plaintiffs' wages statement did not list their actual regular and overtime hours worked.

163.   Plaintiffs allege Defendants implemented and maintained policies to pay non-exempt valets less than the applicable minimum wage by failing to pay valets for hours worked.  All Defendants were aware of the fact that under their system, Plaintiffs regularly worked unpaid hours and/or worked for compensation at less than the applicable minimum wage.

164.   During the liability period, Defendants have routinely failed to pay Plaintiffs the minimum wage required under California and federal law.

165.   Labor Code section 226 requires each employer to furnish accurate itemized wage statements at the time of payment reflecting (1) the gross wages earned, (2) the total hours worked, except for those whose compensation is based solely on a salary and who is exempt, (3) the number of piece-rate units earned and any applicable piece-rate if the employee is paid on a piece-rate basis, (4) all deductions, (5) net wages earned, (6) the dates of the period for which the employee is paid, (7) the name of the employee and last four digits of the employee's social security number or identification number, (8) the name and address of the legal entity that is the employer , and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

166.   Throughout the period applicable to this cause of action, Defendants intentionally failed to furnish to Plaintiffs, upon each payment of wages, itemized statements accurately showing, among other matters: total hours worked, the applicable hourly rates in effect during the pay period, and the corresponding number of hours worked at each hourly rate.

167.   Plaintiffs were damaged by these failures because, among other things, the failures led them to believe that they were not entitled to be paid, even

though they were so entitled, and because the failures hindered them from determining the amounts of wages owed to them.

168.   Plaintiffs are entitled to the amounts provided for in Labor Code section 226(e), which provides for each employee to recover from Defendants fifty dollars ($50) for the initial pay period in which a violation occurred, and one-hundred dollars ($100) for each violation in a subsequent pay period, not to exceed an aggregate penalty of $4,000 per Plaintiff.

169.   Plaintiffs are entitled to an award of attorney fees plus costs.

### Seventh Cause of Action

**Violation of Unfair Competition Law**
**(Bus. and Prof. Code § 17200 *et seq.*)**

170.   Plaintiffs incorporate all previous paragraphs of this Complaint as though fully set forth herein.

171.   Plaintiffs bring this action pursuant to Business and Professions Code sections 17200 *et seq.*  Defendants' conduct alleged above constitutes unlawful business acts and practices in violation of Business & Professions Code sections 17200 *et seq.*  Defendants engaged in unfair competition in violation of the UCL by violating, *inter alia,* each of the following laws, Labor Code sections 201, 202, 203, 226, 226.7, 226.8, 510, 512, 1174, 1175, 1182.12, 1194, 1197, 1197.1, 1198, 1199, and 2802, and applicable Wage Orders, including Wage Order No. 5.

172.    Defendants' course of conduct, acts, and practices in violation of the California laws mentioned in the above paragraph constitute a separate and independent violation of the UCL. Defendants' conduct described herein violates the policy or spirit of such laws or otherwise significantly threatens or harms competition.  The harm to Plaintiffs in being wrongfully denied lawfully earned wages outweighs the utility, if any, of Defendants' policies or practices and, therefore, Defendants' actions described herein constitute an unfair business practice or act within the meaning of the UCL.

173.    The unlawful and unfair business practices and acts of Defendants, and each of them, described above, have injured Plaintiffs in that they were wrongfully denied the payment of earned wages.

174.    Plaintiffs seeks restitution in the amount of the respective unpaid wages earned and due at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a work week, or eight hours in a day, and double the regular rate of pay for work performed in excess of twelve hours per day and such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper.

175.    Pursuant to Business and Professions Code sections 17200 *et seq.*, for the statute of limitations period covered by this cause of action, Plaintiffs are

entitled to restitution for at least the following:  the unpaid withheld and retained by Defendants referred to above.

176.   Plaintiffs and the general public are also entitled to permanent injunctive and declaratory relief prohibiting Defendants from engaging in the violations and other misconduct referred to above.

177.   Defendants are also liable to pay attorneys' fees pursuant to California Code of Civil Procedure section 1021.5 and other applicable law, and costs.  The Plaintiffs also seek recovery of attorneys' fees and costs of this action to be paid by Defendant, as provided by the UCL and California Labor Code §§ 218, 218.5, and 1194.

## Eight Cause of Action

### Violation of Labor Code Section 2699
### (California Private Attorney General Act ("PAGA"))

178.   Plaintiffs, on behalf of themselves and other aggrieved employees, incorporate all previous paragraphs of this Complaint as though fully set forth herein.

179.   Plaintiffs filed a Private Attorney General Act ("PAGA") complaint online with the California's Labor and Workforce Development Agency (LWDA) on approximately April 25, 2023, and served Defendant Monastery Camp by certified mail as prescribed by the Labor Code.

180.   California IWC Wage Orders requires an employer to pay each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise.

181.   Defendants failed to pay Plaintiffs and other aggrieve employees at least minimum wage for all hours worked in violation of Labor Code sections 1194 and 1197.

182.   During the liability period, Defendants have routinely failed to pay Plaintiffs the minimum wage required under California law.

183.   Plaintiffs, by virtue of their employment with Defendants are aggrieved employees with standing to bring an action under PAGA.  Plaintiffs have satisfied all prerequisites to serve as a representative of the general public to enforce California's labor laws, including, without limitation, the penalty provisions identified in Labor Code section 2699.5.

184.   Since the LWDA took no steps within the time period required to intervene and because Defendants took no corrective action to remedy the allegations set forth above, Plaintiffs as representatives of the people of the State of California, seeks any and all penalties otherwise capable of being collected by the Labor Commission and/or the Department of Labor Standards Enforcement ("DLSE").  This includes each of the following, as set forth in Labor Code

Section 2699.5, which provides that Section 2699.3(a) applies to any alleged violation of the following provisions: Sections 558, 1194, 1197, 1197.1, and 1199.

185.   Labor Code section 2699 provides for civil penalties of $100 per employee per pay period for the initial violation and $200 per employee per pay period for each subsequent violation.

186.   Plaintiffs, as representatives of the general public, seek to recover any and all penalties for each and every violation shown to exist or to have occurred during the one-year period before Plaintiffs filed Notice with the LWDA of their intent to bring this action, in an amount according to proof, as to those penalties that are otherwise only available to public agency enforcement actions. Funds recovered will be distributed in accordance with the PAGA, with at least 75% of the penalties recovered being reimbursed to the State of California and the LWDA.

187.   As a result of the acts alleged above, Plaintiffs seek penalties under Labor Code §§ 201-203, 212, 226, 226.7, 510, 1182.12, 1194, 1197, and 1197.1.

188.   Plaintiffs, as representatives of the general public, seeks to recover reasonable attorney's fees and costs under PAGA, Labor Code section 2699(g)(1).

189.   WHEREFORE, Plaintiffs request relief as described herein and below, and as the Court may deem proper.

**VII.**

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs pray for relief as follows:

1.      For civil penalties pursuant to Labor Code Sections 226(e), 226.8(b), 226.8(c), 1174.5, and 1197.1;

2.      For compensatory damages representing the amount of unpaid wages owed to Plaintiffs;

3.      For compensatory damages pursuant to Labor Code Section 226.7 for missed meal and rest breaks;

4.      For compensatory damages pursuant to Labor Code Section 2802;

5.      For reasonable attorneys' fees and costs pursuant to Labor Code Sections 226(e), 1194, and 2802(c);

6.      For such general and special damages as may be appropriate;

7.      For liquidated damages as authorized pursuant to Labor Code Sections 1194.2;

8.      For waiting time penalties and civil penalties for Plaintiffs;

9.      For pre-judgment interest;

10.    For restitution as described in the cause of action under Business & Professions Code §§ 17200 *et seq.* above;

11.    For permanent injunctive and declaratory relief described in the cause of action under Business & Professions Code §§ 17200 *et seq.* above;

12.    A declaratory judgment that the practices complained of herein are unlawful under California state law;

13.    Attorney's fees and costs of suit, including expert fees pursuant to California Labor Code §§218.5, 1194, and Code Civ. Proc. §1021.5; and

14.    Such other injunctive and equitable relief as the Court may deem proper.


**DATED:**  May 23, 2024                 **NUNES LAW GROUP, APC**


_Anthony Nunes_
By:  Anthony J. Nunes, Esq.
Attorneys for Plaintiffs ANTHONY
GREGG, SHAWN GRANGER, and
WALLID SAAD, on behalf of themselves
and all others similarly situated