ANTHONY J. NUNES (BAR NO. 290224)
NUNES LAW GROUP, APC
15260 Ventura Blvd, Suite 1200
Sherman Oaks, CA 91403
Phone: (855) 422-5529
tony@nunesworkerrightslaw.com

Attorneys for Plaintiffs ANTHONY GREGG, SHAWN GRANGER, and WALLID SAAD, on behalf of themselves and all others similarly situated

GRANT P. ALEXANDER (BAR NO. 228446)
E-Mail: galexander@allenmatkins.com
MELISSA K. BELL (BAR NO. 312873)
E-Mail: mbell@allenmatkins.com
ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax: (213) 620-8816

Attorneys for Defendants MONASTERY CAMP, WILLIAM DAWSON, RICHARD DEWEY, and MICHAEL LAHORGUE

# UNITED STATE DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY GREGG, SHAWN GRANGER, and WALLID SAAD, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MONASTERY CAMP, WILLIAM DAWSON, RICHARD DEWEY, MICHAEL LAHORGUE, and DOES 1-10,<br><br>Defendants. | Case No. 3:23-CV-02760-AMO<br><br>Hon. Araceli Martinez-Olguin<br><br>**JOINT MOTION FOR APPROVAL OF PAGA SETTLEMENT AND DISMISSAL**<br><br>Date of Filing:        June 5, 2023 |

**TABLE OF CONTENTS**

I. INTRODUCTION ...........................................................................................................1

II. STATEMENT OF THE CASE ......................................................................................1

    A. Procedural History .................................................................................................1

III. THE SETTLEMENT ......................................................................................................3

    A. General Description of the Settlement ...................................................................3

        1. Settlement Group and Period .....................................................................3

        2. Settlement Amounts ...................................................................................3

        3. Calculation of the Individual PAGA Settlement Amounts ........................4

    B. Claim Form .............................................................................................................4

    C. The Scope of the Release ........................................................................................4

IV. THE PROPOSED PAGA SETTLEMENT MEETS THE STANDARDS FOR APPROVAL ..........................................................................................................5

    A. The PAGA Settlement is Fair, Reasonable, and Adequate. ...................................5

    B. The Settlement is the Product of Non-Collusive, Arm's-Length and Informed Negotiations ............................................................................................................6

    C. Plaintiffs' Allegations Regarding Labor Code and PAGA Violations ...................6

    D. Defendants' Responses to Plaintiffs' Allegations ..................................................7

    E. The Settlement is Reasonable in Light of Significant Litigation Risks ..................8

    F. The PAGA Representative Service Awards to Plaintiffs are Reasonable .............9

    G. The Attorneys' Fees are Reasonable ......................................................................9

V. CONCLUSION ............................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Amaral v. Cintas Corp. No. 2*
163 Cal.App.4th 1157 (2008) ........................................................................................... 7

*Bell v. Farmers Ins. Exchange*,
115 Cal. App. 4th 715 (2004)........................................................................................... 9

*Carrington v. Starbucks Corp.*
30 Cal.App.5th 504 (2018) ............................................................................................... 8

*In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.*,
497 F. Supp. 3d 552, 670 (N.D. Cal. 2020) ..................................................................... 6

*Wershba v. Apple Computers, Inc.*,
91 Cal.App.4th 224 (2001)............................................................................................... 6

**Statutes**

Federal Rule of Civil Procedure 41(a)(1)(A)(ii) ...................................................................... 1, 10

California Business and Professions Code § 17200............................................................... 5

California Labor Code § 201 et seq. ................................................................................... 5, 7

California Labor Code § 510 et seq. ...................................................................................... 5

California Labor Code § 1174 et seq. .................................................................................... 5

California Labor Code § 2698 ("Private Attorney General Act") ..................................1-6, 8-10

California Labor Code § 2802................................................................................................ 5

## I. INTRODUCTION

This motion seeks approval of the enclosed PAGA Settlement Agreement as memorialized in the "PAGA Settlement Agreement" (hereinafter "Settlement" or "Settlement Agreement"). The parties reached this Settlement Agreement through arm's-length bargaining, after sufficient investigation, discovery, and a mediation. Pursuant to FRCP 41(a)(1)(A)(ii), the Parties jointly seek to dismiss this action.

The main elements of the Settlement Agreement are:

1. Defendants agree to pay a "Gross Settlement Amount" of $88,500 in full and complete settlement of the Action. (Nunes Decl. ¶ 3.)

2. Up to $10,000 for each Plaintiff as PAGA Representative Service Awards, in recognition of their contributions to the Action and their service to the Aggrieved Employees. These PAGA Representative Service Awards are in addition to each Plaintiffs' individual settlements. (Nunes Decl. ¶ 4.)

3. Up to $20,000 of the Gross Settlement Amount in PAGA Counsel's attorneys' fees. (Nunes Decl. ¶ 7.)

4. PAGA Counsel is Anthony J. Nunes of Nunes Law Group, APC (hereinafter as "PAGA Counsel.")

5. Ten-Thousand Dollars ($10,000.00) of the Gross Settlement Amount has been set aside by the Parties as PAGA civil penalties. Per Labor Code section 2699, subdivision (i), seventy-five percent (75%) of such penalties, or Seven-Thousand, Five Hundred Dollars an ($7,500.00) will be payable to the California Labor & Workforce Development Agency ("LWDA"), and the remaining twenty-five percent (25%), or Two-Thousand, Five Dollars and Zero Cents ($2,500.00), will be payable to PAGA Settlement members as the "PAGA Amount." (Nunes Decl. ¶ 8.)

The Parties agree the settlement is fair and reasonable, and confers a substantial benefit upon the five Aggrieved Employees.

## II. STATEMENT OF THE CASE

### A. Procedural History

On June 5, 2023, Plaintiffs filed a Class Action Complaint in this Court alleging violations of the Fair Labor Standards Act; the California Labor Code and the California Industrial Welfare Commission Wage Orders; the Business and Professions Code; and the

California Private Attorneys General Act ("PAGA"). On June 7, 2023, Plaintiffs filed a First Amended Complaint correcting the last name of Plaintiff Shawn Granger. On September 6, 2023, Defendant Monastery Camp filed its answer to the First Amended Complaint. (Nunes Decl. ¶ 9.)

On September 11, 2023, then-named defendants Bohemian Club and Pomella LLC filed motions to dismiss, which the Court granted, with prejudice, on January 19, 2024.

On May 23, 2024, after requesting and obtaining leave to amend, Plaintiffs filed a Second Amended Complaint, against Defendants for violations of PAGA, in which Plaintiffs added three individuals (William Dawson, Richard Dewey, Michael LaHorgue) as Defendants to the action. The Second Amended Complaint is the operative complaint in the Action (the "Operative Complaint" or "Complaint"). Defendants deny the allegations in the Operative Complaint, deny any failure to comply with the laws identified in the Operative Complaint, and deny any and all liability for the causes of action alleged. (Nunes Decl. ¶ 11.) Defendants also filed an Answer to the Operative Complaint asserting 24 affirmative defenses, and a Counterclaim against Plaintiff and Counter-Defendant Gregg for declaratory relief, intentional interference with contract, and negligence. Counter-Defendant Gregg did not file any responsive pleading.

On January 19, 2024, the Court signed an Order dismissing Defendants Bohemian Club and Pomella LLC from the action.

On November 20, 2024, the Parties mediated Plaintiffs' claims with the Court's appointed Mediator – Carl Blumenstein – whose skilled guidance helped the parties reach a negotiated settlement. (Nunes Decl. ¶ 13.)

On November 21, 2024, the Parties executed a Memorandum of Understanding agreeing to settle Plaintiffs' claims on an individual basis, each party to bear its own costs and attorneys' fees incurred. (Nunes Decl. ¶ 13.)

Defendants contend that Plaintiffs and Aggrieved Employees were employed directly by Pomella LLC. (*See* Defendants' Answer, Document 77, ¶ 5.) Defendants asserted that Monastery Camp contracted with Pomella LLC to provide catering services, and any liability for wage violations lies with Pomella LLC. (*See* Defendants' Counterclaim, Document 77, at ¶ 14.) Whereas Plaintiffs contend that Defendants controlled the mean, manner, and methods of Plaintiffs' employment. (Operative Complaint, Document 76, ¶ 52.) Plaintiffs maintain that

they would report 8 hours of work for 5 days a week on their Pomella timesheets, while Defendants were directing Plaintiffs to falsify their timesheets and were well aware that their small staff was sometimes working 16-hour days for 7 days a week. (*Id.* at ¶¶ 90-95.)

The Parties' Settlement Agreement includes resolution of all Plaintiffs' individual claims with prejudice under state and federal law.

Since the mediation, the Parties negotiated terms and conditions of the Settlement Agreement in accordance with the executed Memorandum of Understanding.

As of February 12, 2025, Plaintiffs Gregg, Saad, and Granger (collectively, "Plaintiffs"), as well as Defendants Monastery Camp, William Dawson, Richard Dewey, Michael LaHorgue (collectively, "Defendants") (together, Plaintiffs and Defendants shall be referred to as the "Parties") have executed a Settlement Agreement resolving the action. (Nunes Decl. ¶ 18.)

### III. THE SETTLEMENT

#### A. General Description of the Settlement

##### 1. Settlement Group and Period

For the purposes of this Settlement Agreement, Plaintiffs and Defendants stipulate to the following PAGA Settlement Group:

> All "Aggrieved Employees" of Defendants and each Released Party employed in California during the "PAGA Period."

For the purposes of this Settlement Agreement, "Aggrieved Employee" is defined as all non-exempt valets who worked for Defendants in California during the PAGA Period and includes Plaintiff Anthony Gregg, Plaintiff Shawn Granger, and Plaintiff Wallid Saad, as well as non-plaintiffs Juan Jimenez, and Drew Curlett. (Nunes Decl. ¶ 2, Exh. A ¶ 1.2.)

For the purposes of this Settlement Agreement, the "PAGA Period" is defined as April 25, 2022 to November 20, 2024. (Nunes Decl. ¶ 2, Exh. A ¶ 1.16.)

##### 2. Settlement Amounts

Defendants will pay, on a non-reversionary basis, $88,500 ("Gross Settlement Amount") as required by the Settlement Agreement.

PAGA Counsel will seek Court approval of a reasonable incentive payment to be made to each Plaintiff in the amount of $10,000.

PAGA Counsel shall seek approval from the Court for an attorneys' fees award of $20,000. (Nunes Decl. ¶¶ 3, 4, 7.)

### 3.   Calculation of the Individual PAGA Settlement Amounts

From the Gross Settlement Amount $10,000.00 has been designated as the "PAGA Amount" as described above with 75% ($7,500.00) allocated to the California Labor & Workforce Development Agency ("LWDA"), and 25% ($2,500.00) allocated to the Individual PAGA Payments. (Nunes Decl. ¶ 8.)

The Parties estimated that the "Aggrieved Employees" worked approximately forty-five (45) pay periods during the PAGA Period. This amounts to a PAGA payment of $222.22 per pay period worked. (Nunes Decl. ¶ 8.)

Defendants maintain that Defendants did not employ any Plaintiffs or Aggrieved Employees. The Parties agree that records do not exist to identify the exact number of workdays or pay periods were worked by each Plaintiff and Aggrieved Employee.

Without records available to precisely allocated based on pay periods worked, the Parties agree to equally split the $2,500 among the five Aggrieved Employees, with each Aggrieved Employee receiving $500. (Nunes Decl. ¶ 25.)

The "Aggrieved Employees" are Plaintiff Anthony Gregg, Plaintiff Shawn Granger, and Plaintiff Wallid Saad, as well as non-plaintiffs Juan Jimenez, and Drew Curlett. (Nunes Decl. ¶ 25.)

### B.   Claim Form

No claim form is necessary for this settlement as all Aggrieved Employees are known and represented by Plaintiffs' counsel. (Nunes Decl. ¶ 25.)

### C.   The Scope of the Release

Plaintiffs, the State of California, and all Aggrieved Employees are deemed to release, on behalf of themselves and their respective former and present representatives, agents, attorneys, heirs, successors, and assigns, the Released Parties from all claims for PAGA penalties that were alleged, or reasonably could have been alleged, based on the PAGA Period facts stated or which could have reasonably have been alleged in the Operative Complaint and the PAGA Notice including, e.g., failure to pay minimum wage; violation of the Fair Labor Standards Act; failure to provide meal periods; failure to provide paid rest breaks; failure to pay all wages at termination; failure to provide accurate wage statements; and unfair business practices. These include all

claims under Labor Code sections 201, 204, 226, 226.7, 226.8, 510, 512, 1174, 1174.5, 1182.12, 1194, 1197, 1197.1, 1198, 1199, and 2802, et seq., and the applicable IWC Wage Orders, and California Business and Professions Code section 17200, et seq. (Nunes Decl. ¶ 19.)

Plaintiffs agree to a general release of Defendants from all claims, demands, rights, liabilities, grievances, demands for arbitration, and causes of action of every nature and description whatsoever, known or unknown, pending or threatened, asserted or that might have been asserted, whether brought in tort or in contract, whether under state or federal or local law. This general release includes all employment-related and non-employment-related claims, whether known or unknown, arising during the PAGA Period and time period for Plaintiffs' individual (non-PAGA) wage claims. (Nunes Decl. ¶ 20.)

## IV. THE PROPOSED PAGA SETTLEMENT MEETS THE STANDARDS FOR APPROVAL

### A. The PAGA Settlement is Fair, Reasonable, and Adequate.

The proposed settlement is fair, reasonable, and adequate. The settlement amount is significant, considering the small number of the five Aggrieved Employees. The settlement will also result in a substantial benefit to all Aggrieved Employees. The Settlement was reached only after formal and informal discovery and arm's length negotiations under the guidance of a highly respected and experienced mediator had occurred. (Nunes Decl. ¶¶ 24, 30-1.)

In light of the facts and complications regarding arguments about the joint employer theory and independent contractor status, the identity of Plaintiffs' true employer, Defendants' Counterclaim, and Defendants' unclean hands defense and argument, the Parties are of the opinion that the Settlement is fair, reasonable, and adequate, and in the best interests of the Plaintiffs, the five Aggrieved Employees PAGA members, and the State of California. The Parties recognize that the issues presented in the lawsuit are likely only to be resolved with extensive and costly pretrial and trial proceedings, and that further litigation will cause inconvenience, distraction, disruption, delay, and expense disproportionate to the potential benefits of litigation. The Parties have taken into account the risk and uncertainty of the outcome inherent in any litigation. (Nunes Decl. ¶¶ 24, 30-1.)

Prior to mediation, Plaintiffs obtained, through formal and informal discovery payroll records, the policies and procedures from Monastery Camp and former Defendant Pomella LLC, records regarding the payment of wages, provision of meal and rest breaks, timekeeping policies

(including recording hours), and payments made for the Aggrieved Employees from Pomella LLC and Monastery Camp. Plaintiffs' investigation was sufficient to satisfy the criteria for court approval. (Nunes Decl. ¶ 14.)

### B. The Settlement is the Product of Non-Collusive, Arm's-Length and Informed Negotiations

Courts recognize that "a presumption of fairness exists where ... [a] settlement is reached through arm's-length bargaining." *Wershba v. Apple Computers, Inc.*, 91 Cal.App.4th 224 (2001). Here the Settlement Agreement was reached after mediation with Carl Blumenstein, the Court-appointed Mediator, whose skilled guidance helped the parties reach a negotiated settlement after approximately 10 hours of mediation.

In reaching the Settlement Agreement, counsel relied on their respective substantial litigation experience in similar employment PAGA and class actions. Information gleaned from investigation informed PAGA Counsel's assessment of the strengths and weaknesses of the case, and the benefits of the Settlement. (Nunes Decl. ¶¶ 21-3.)

### C. Plaintiffs' Allegations Regarding Labor Code and PAGA Violations

Plaintiffs contend Defendants may be held personally liable for the failure to pay Plaintiffs' wages because the individual Defendants directly instituted an illegal under-the-table pay scheme for Monastery Camp. Plaintiffs allege that Defendants Dawson, Dewey, and LaHorgue supervised the Plaintiffs, created the illegal wage scheme, and paid Plaintiffs under-the-table. Individual liability is proper when allegations show that the individual defendants were intimately involved in creating the operations and employment practices. *In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 670 (N.D. Cal. 2020). (Nunes Decl. ¶ 26.)

Plaintiffs also alleged that they cannot be characterized as independent contractors. Rather, Plaintiffs maintain that Defendants controlled every minute of Plaintiffs' time at Monastery Camp. Defendants set meals/drinking schedules and Plaintiffs were not supposed to use the cell phones or walk outside of Monastery Camp. Plaintiffs contend that since they received a mix of checks and cash from Monastery Camp, the Defendants who refused to use Bohemian Club's approved staffing agency and set up their own pay scheme could be held personally liable for the wage violations. (Nunes Decl. ¶ 27.)

Plaintiffs contend Defendants failed to provide Aggrieved Employees with meal periods. Plaintiffs allege Defendants' demanding around-the-clock work requirements did not allow for scheduled meal periods. Similarly, Plaintiffs contend rest breaks were not provided and Aggrieved Employees did not receive a full 10-minutes for rest breaks. (Nunes Decl., ¶ 28.)

Plaintiffs also brought claims that are logically derived from proving other claims, including a failure to provide accurate wage statements, waiting time penalties for failure to pay all wages at termination, and unfair business practices. (Nunes Decl., ¶ 28.) Plaintiffs allege that Plaintiffs' claim under the Fair Labor Standard Act ("FLSA") for failure to pay minimum wage create derivative violations of Labor Code § 226 (wage statement violations) and §§ 201-203 (waiting time penalties for failure to pay all wages at termination). The derivative wage statement claims and the waiting time penalties claim are based on the primary unpaid wage and meal/rest break claims, and will rise or fall along with the primary claims, in addition to being subject to "good faith" and other defenses available to Defendant. *Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1203-04 (holding employer did not willfully fail to pay wages under Labor Code § 203 even though the class prevailed on the merits on the underlying claim). (Nunes Decl., ¶ 29.)

### D.     **Defendants' Responses to Plaintiffs' Allegations**

On the unpaid wage claim, Defendants argued it could not be held responsible for any wage violations. Defendants maintain that dismissed Defendant Pomella LLC employed Plaintiffs and any payments from Defendants to Plaintiffs were tips. Defendants contend that Plaintiffs had employment agreements with Pomella LLC that included an explicit provision that each Plaintiff was an employee of Pomella for the duration of the events at Monastery Camp. (Nunes Decl., ¶ 29.) Defendants also brought a Counterclaim against Defendant Gregg and believe that he misrepresented the time that he worked when he turned in his timesheets to Pomella and violated the FLSA, the California Labor Code, and contributed to any purported damages and penalties to which Plaintiffs would otherwise be entitled, if any.

For the meal and rest break claims, Defendants emphasized that Aggrieved Employees were authorized and permitted breaks, and that Aggrieved Employees received full uninterrupted lunch periods. Additionally, Defendants argue that, in light of the fact that they contend that Defendants were not Aggrieved Employees' employer, they were not required to maintain a record of meal and rest periods. Furthermore, any evidence of failure to authorize rest periods

and/or discouragement from taking rest periods would be anecdotal and individual issues would predominate. (Nunes Decl., ¶ 29.)

Accordingly, Defendants believe Plaintiffs needed to discount the value of these claims significantly in light of these multiple potential defenses. Defendants also contended a substantial discount should be applied to the civil penalties for these derivative (i.e., "stacked") violations, as it would be unfair to penalize Defendants multiple times for the same violation. (Nunes Decl., ¶ 29.)

Defendants emphasized that PAGA gives the Court wide latitude to reduce the civil penalties, and state and federal courts in California have applied significant reductions to PAGA civil penalties even after plaintiff prevailed on the merits. In *Carrington v. Starbucks Corp.* (2018) 30 Cal.App.5th 504, the trial court awarded penalties of just $5 per pay period, a 90% reduction. Defendants raised various defenses to each of Plaintiffs' claims, anyone of which, if successful, could have decimated Plaintiffs' case. Accordingly, Plaintiffs faced risks going forward with this litigation, and it could have taken years to realize any recovery in this action along with the possibility of post-trial appeals. In addition to its merits defenses and arguing that trial would be unmanageable, Defendants also intended to raise additional defenses on damages, including the proper measure of civil penalties and the appropriate discount to place on any assessment of such penalties. (Nunes Decl., ¶ 29.)

### E. The Settlement is Reasonable in Light of Significant Litigation Risks

Defendants deny all of Plaintiffs' claims and allegations of non-compliance, deny any and all liability to Aggrieved Employees, deny wrongdoing of any and every kind, contend that it complied at all times with the California Labor Code, and contend that the litigation is neither meritorious nor appropriate for class treatment other than for purposes of settlement. However, the Plaintiffs and PAGA Counsel recognize and acknowledge the expense and delay of the lengthy proceedings necessary to prosecute the Action against Defendants through trial.

Furthermore, counsel has considered the risks inherent in any litigation, and the additional risk of continued litigation. Moreover, counsel has also considered the potential difficulty in maintaining the case as a PAGA action.

Plaintiffs' and Defendants both believe they could have prevailed. Nevertheless, given Plaintiffs testimony and Defendants' merit-based defenses, as well as the substantial penalty

MOTION FOR APPROVAL OF PAGA SETTLEMENT AND DISMISSAL

reductions sometimes ordered in similar cases, the Parties believe the proposed settlement is fair, adequate, and reasonable. (Nunes Decl., ¶ 24, 30-1.)

Counsel is mindful of the fact that at trial there is always the chance the trier of fact could disagree with either parties' position. In light of the preceding potential risks, counsel believes that the Settlement set forth in the Settlement Agreement confers substantial benefits upon each of the five Aggrieved Employee. (Nunes Decl., ¶ 24, 30-1.)

### F. The PAGA Representative Service Awards to Plaintiffs are Reasonable

The proposed PAGA Representative Service Awards are intended to recognize Plaintiffs' substantial initiative, risk, and effort. Courts routinely approve incentive awards to compensate plaintiffs for the services they provide and the risks they incur during litigation. See *Bell v. Farmers Ins. Exchange*, 115 Cal. App. 4th 715, 726 (2004) (upholding service payments to named plaintiffs for their efforts in bringing the case).

Prior to seeking counsel, Plaintiffs compiled the key documents Plaintiffs' counsel relied upon to draft the complaint. Plaintiffs met with counsel and detailed their experiences with Defendants. Since the case was filed, Plaintiffs and counsel have had scores of conversations and exchanged dozens of emails regularly discussing the case and legal strategies. Each Plaintiff worked closely with counsel in drafting Declarations, putting statements into their own words, and providing supporting documents for various declarations submitted during this action. Each Plaintiff also appeared for and participated in the November 20, 2024 mediation. (Nunes Decl. ¶ 6.)

Plaintiffs assisted PAGA Counsel at every stage, from reviewing the pleadings to providing input through repeated questions from counsel regarding every aspect of this case, and remaining in close contact with counsel from day one. Counsel does not seek participation payments for any other persons other than Plaintiffs. (Nunes Decl. ¶ 5.)

Accordingly, Plaintiffs believe $10,000 enhancement awards fairly compensate Plaintiffs for the full release, and the substantial assistance they provided.

### G. The Attorneys' Fees are Reasonable

Plaintiffs contend and Defendants do not oppose that the $20,000 in attorneys' fees requested is appropriate and should be approved as fair and reasonable. While the recommendations of counsel proposing the Settlement are not conclusive, the Court can properly take them into account, particularly where, as here, they have been involved in litigation for a

period of time, appear to be competent, have experience with this type of litigation, and have obtained substantial evidence from the opposing party.

Here, the firms involved in the case have extensive experience in PAGA litigation. PAGA Counsel here have been approved as counsel in PAGA and class actions settlements, including PAGA wage-and-hour matters. Each side has apprised the others of their respective factual contentions, legal theories, and defenses, resulting in extensive arms-length negotiations taking place among the Parties. (Nunes Decl. ¶¶ 21-3.)

## V.    CONCLUSION

Pursuant to the voluntary dismissal provision of FRCP 41(a)(1)(A)(ii), the Parties seek to dismiss this entire action with prejudice.

Additionally, the Parties request the Court approve of the $10,000 PAGA settlement. Plaintiffs' counsel represents all five Aggrieved Employees and each Aggrieved Employee is in support of this Settlement Agreement. This arm's-length settlement avoids significant litigation risk and makes settlements available to the five Aggrieved Employees. For these reasons, the Parties jointly and respectfully request that the Court approve the PAGA Settlement and dismiss the action with prejudice.

DATED: March 29, 2025                NUNES LAW GROUP, APC

By: *Anthony J. Nunes*
Anthony J. Nunes, Esq., Attorneys for Plaintiffs
ANTHONY GREGG, SHAWN GRANGER, and WALLID SAAD

DATED: March 29, 2025                ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP

By: /s/ Melissa K. Bell
Melissa K. Bell, Esq. Attorneys for Defendants
MONASTERY CAMP, WILLIAM DAWSON, RICHARD DEWEY, and MICHAEL LAHORGUE