ANTHONY J. NUNES (BAR NO. 290224)
NUNES LAW GROUP, APC
15260 Ventura Blvd, Suite 1200
Sherman Oaks, CA 91403
Phone: (855) 422-5529
tony@nunesworkerrightslaw.com

Attorneys for Plaintiffs ANTHONY GREGG, SHAWN GRANGER, and WALLID SAAD, on behalf of themselves and all others similarly situated

# UNITED STATE DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY GREGG, SHAWN GRANGER, and WALLID SAAD, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MONASTERY CAMP, WILLIAM DAWSON, RICHARD DEWEY, MICHAEL LAHORGUE, and DOES 1-10,<br><br>Defendants. | Case No.  3:23-CV-02760-AMO<br><br>Hon. Araceli Martinez-Olguin<br><br>**DECLARATION OF ANTHONY J. NUNES IN SUPPORT OF JOINT MOTION FOR APPROVAL OF PAGA SETTLEMENT AND DISMISSAL**<br><br>Date of Filing:        June 5, 2023 |

**DECLARATION OF ANTHONY J. NUNES**

I, ANTHONY J. NUNES, declare:

1.  I am admitted to practice in California State Court, as well as the Northern, Central, and Eastern California Federal Districts, and the Ninth Circuit Court of Appeal. I submit this Declaration in support of Plaintiffs' Motion for Approval of PAGA Settlement and Dismissal.

2.  Attached as **Exhibit A** is the Parties' Settlement Agreement and Release (hereinafter "Settlement").

3.  Under the terms of the Settlement, Defendants agreed to pay a non-revisionary "Gross Settlement Amount" of $88,500 in full and complete settlement of the Action. (**Exhibit A**, ¶ 1.8.)

4.  Additionally, $10,000 for each Plaintiff as PAGA Representative Service Awards, in recognition of their contributions to the Action and their service to the Aggrieved Employees. Per the Settlement, the PAGA Representative Service Awards are in addition to each Plaintiffs' individual settlements. (**Exhibit A**, ¶ 3.2.2.)

5.  Plaintiffs reviewed counsel's pleadings and motions to provide input through repeated questions regarding every aspect of this case. Plaintiffs have been in close contact with counsel for the past 24 months.

6.  Counsel believes $10,000 enhancement awards fairly compensate Plaintiffs for the substantial and critical assistance they provided throughout the case. Prior to seeking counsel, Plaintiffs compiled the key documents Plaintiffs' counsel relied upon to draft the complaint. Plaintiffs met with counsel and detailed their experiences with Defendants. Since the case was filed, Plaintiffs and counsel have had scores of conversations and exchanged dozens of emails regularly discussing the case and legal strategies. Plaintiffs and counsel worked closely together in drafting Declarations, putting statements into their own words, and providing supporting documents for various Declarations submitted during this action. Each Plaintiff also appeared for and participated in the November 20, 2025 mediation.

7. From the $88,500 Gross Settlement Amount, $20,000 in the Settlement is allocated as attorneys' fees. (**Exhibit A**, ¶ 3.2.1.)

8. The Settlement includes $10,000.00 as PAGA civil penalties. Per Labor Code section 2699, subdivision (i), 75% of the penalties or $7,500 is payable to the California Labor & Workforce Development Agency, and the remaining 25% or $2,500 is payable to PAGA Settlement members as the "PAGA Amount." I estimated that the five "Aggrieved Employees" (each of whom I represent) worked approximately forty-five (45) pay periods during the PAGA Period. This amounts to a PAGA payment of $222.22 per pay period worked. (**Exhibit A**, ¶ 3.2.4.)

9. On behalf of Plaintiffs, on June 5, 2023, I filed a Class Action Complaint ("Complaint") in this Court alleging violations of the Fair Labor Standards Act; the California Labor Code and the California Industrial Welfare Commission Wage Orders; the Business and Professions Code; and the California Private Attorneys General Act ("PAGA"). On June 7, 2023, Plaintiffs filed a First Amended Complaint correcting the last name of Plaintiff Shawn Granger. On September 6, 2023, Defendant Monastery Camp filed its answer to the First Amended Complaint.

10. On September 11, 2023, then-named Defendants Bohemian Club and Pomella LLC filed motions to dismiss, which the Court granted, with prejudice, on January 19, 2024.

11. After requesting and obtaining leave to amend, on May 23, 2024, I filed a Second Amended Complaint, against Defendants for violations of the PAGA in which Plaintiffs added three individuals (William Dawson, Richard Dewey, Michael LaHorgue) as Defendants to the action.

12. On January 19, 2024, the Court signed an Order dismissing Defendants Bohemian Club and Pomella LLC from the action.

13. On November 20, 2024, the Parties mediated Plaintiffs' claims with Mediator Carl Blumenstein, whose skilled guidance helped the parties reach a negotiated settlement. The

next day, the Parties executed a Memorandum of Understanding agreeing to settle Plaintiffs' claims on an individual basis, each party to bear its own costs and attorneys' fees incurred.

14. Prior to mediation, Plaintiffs obtained, through formal and informal discovery payroll records, the policies and procedures from Monastery Camp and former Defendant Pomella LLC, records regarding the payment of wages, provision of meal and rest breaks, timekeeping policies (including recording hours), and payments made for the Aggrieved Employees from Pomella LLC and Monastery Camp.

15. Defendants have asserted an unclean hands defense, and argument that Plaintiffs were complicit in Defendants' payroll scheme. (*See* Defendants' Answer to Operative Complaint and Counterclaim, Document 77.) Defendants argue that Plaintiff and Counter-Defendant Gregg conspired to control the terms and conditions of employment of the Aggrieved Employee valets. (*See* Counterclaim, Document 77.) Defendants insisted Plaintiff Gregg tried to interfere with the contracts between Pomella LLC and Monastery Camp, and personally instructed the other Plaintiffs to misrepresent time worked. (*Id.*)

16. Plaintiffs argue that Plaintiff Gregg as Head Valet was directed by Defendants to communicate Defendants' orders. All three Plaintiffs performed the same valet work (e.g., cooking, cleaning, laundry).

17. Defendants contend they did not employ Plaintiffs and that Plaintiffs were employed directly by Pomella LLC. (*See* Defendants' Answer, Document 77, ¶ 5.) Defendants asserted that Monastery Camp contracted with Pomella LLC to provide catering services, and any liability for wage violations lies with Pomella LLC. (*See* Defendants' Counterclaim, Document 77, at ¶ 14.) Whereas Plaintiffs contend that Defendants controlled the mean, manner, and methods of Plaintiffs' employment. (Operative Complaint, Document 76, ¶ 52.) Plaintiffs maintain that they would report 8 hours of work for 5 days a week on their Pomella timesheets, while Defendants were directing Plaintiffs to falsify their timesheets and were well aware that their small staff was sometimes working 16-hour days for 7 days a week. (*Id.* at ¶¶ 90-95.)

3
DECLARATION OF NUNES ISO MX FOR APPROVAL OF PAGA SETTLEMENT AND DISMISSAL

18. Plaintiffs and Defendants fully executed the Settlement on February 25, 2025, resolving the action. (**Exhibit A**.)

19. Under the Settlement, Plaintiffs, the State of California, and all Aggrieved Employees are deemed to release, on behalf of themselves and their respective former and present representatives, agents, attorneys, heirs, successors, and assigns, the Released Parties from all claims for PAGA penalties that were alleged, or reasonably could have been alleged, based on the PAGA Period facts stated or which could have reasonably have been alleged in the Operative Complaint and the PAGA Notice including, e.g., failure to pay minimum wage; violation of the Fair Labor Standards Act; failure to provide meal periods; failure to provide paid rest breaks; failure to pay all wages at termination; failure to provide accurate wage statements; and unfair business practices. These include all claims under Labor Code sections 201 204, 226, 226.7, 226.8, 510, 512, 1174, 1174.5, 1182.12, 1194, 1197, 1197.1, 1198, 1199, and 2802, et seq., and the applicable IWC Wage Orders, 29 U.S.C. 201, et seq., and California Business and Professions Code section 17200, et seq. (**Exhibit A**, ¶ 5.1.)

20. Under the Settlement, Plaintiffs agree to a general release of Defendants from all claims, demands, rights, liabilities, grievances, demands for arbitration, and causes of action of every nature and description whatsoever, known or unknown, pending or threatened, asserted or that might have been asserted, whether brought in tort or in contract, whether under state or federal or local law. This general release includes all employment-related and non-employment-related claims, whether known or unknown, arising during the PAGA Period and time period for Plaintiffs' individual (non-PAGA) wage claims. (**Exhibit A**, ¶ 5.2.)

21. Information gleaned from investigation informed PAGA Counsel's assessment of the strengths and weaknesses of the case, and the benefits of the Settlement.

22. In reaching the Settlement Agreement, counsel relied on their respective litigation experience in other PAGA wage-and-hour cases and class actions. I have been Court certified as lead counsel in PAGA action settlements. For example, in *Brightenstine et al. v. Tracy VW, Inc., dba Tracy Volkswagen* (San Joaquin County Superior Court Case No. STK-

CV-UOE-2020-0009405), the Court issued an Order and Judgment on May 5, 2021, approving my firm and I as Class and PAGA Counsel. Similarly, in *Sanchez et al. v. J.A. Moss, Inc., dba Moss Brothers Dodge Riverside* (Riverside County Superior Court Case No. RIC1600480), the Court issued an Order and Judgment on December 18, 2019, approving my firm and I as Class and PAGA Counsel.

23. Additionally, under FRCP 41(a)(1)(A)(ii), I have previously dismissed three PAGA class actions with prejudice in the Northern District of California (*Brelsford v. Your Mechanic, INC.,* 3:20-cv-04452-EMC (dismissed Mar. 22, 2022); *Willis v. HSC Solutions LLC,* 3:20-cv-06878-EMC (dismissed Aug. 3, 2021); and *Funkhouser v. DAC FF 91, INC.*, 19-CV-01197-MMC (dismissed Nov. 13, 2020)).

24. Counsel believes the settlement is fair, reasonable and adequate. The settlement amount is significant, considering the small size of the five-member Aggrieved Employees.

25. All Aggrieved Employees are known and represented by Plaintiffs' counsel. The "Aggrieved Employees" are Plaintiff Anthony Gregg, Plaintiff Shawn Granger, and Plaintiff Wallid Saad, as well as non-plaintiffs Juan Jimenez, and Drew Curlett. Without records available to precisely allocated based on pay periods worked, the Parties agree to equally split the $2,500 among the five Aggrieved Employees, with each Aggrieved Employee receiving $500.

26. As stated in the Complaint and described in my mediation brief, I believe Defendants may be held personally liable for the failure to pay Plaintiffs' wages because the individual Defendants directly instituted an illegal under-the-table pay scheme for Monastery Camp. At trial, I planned to argue that Defendants Dawson, Dewey, and LaHorgue supervised my clients, created an illegal wage scheme, and illegally paid my clients under-the-table.

27. My clients and I believe that Defendants controlled every minute of their time at Monastery Camp. Defendants set meals/drinking schedules and my clients were not supposed to use the cell phones or walk outside of Monastery Camp. We intended to argue that my

clients received a mix of checks and cash from Monastery Camp because Defendants refused to use Bohemian Club's approved staffing agency and set up their own pay scheme.

28. My clients and I contend that Defendants failed to provide them and the two other Aggrieved Employees with meal periods because demanding around-the-clock work requirements did not allow for scheduled meal periods. Similarly, rest breaks were not provided and they did not receive a full 10-minutes for rest breaks. We also brought claims that are logically derived from proving other claims, including a failure to provide accurate wage statements, waiting time penalties for failure to pay all wages at termination, and unfair business practices.

29. I put in my own words the descriptions of the arguments made by Defendants during litigation. These arguments were conveyed in Defendants' Answer to the Complaint, Defendants' Opposition to our Motion for Leave to File an Amended Complaint, Defendants' Mediation Brief, and various conversations and correspondence with defense counsel. My clients and I disagree with these arguments, but admit there is a good chance the trier of fact could disagree with our position. In light of the potential risks, I believe that this settlement confers substantial benefits upon the five Aggrieved Employees.

30. I have conducted a thorough investigation into the facts and have diligently pursued an investigation of the PAGA Cause of Action against Defendant. Based on my own independent investigation and evaluation, I am of the opinion that the PAGA Settlement with Defendants is fair, reasonable, and adequate, and is in the best interests of the public, the State of California, the five PAGA Group Members, and the California LWDA in light of all known facts and circumstances, including the risk of significant delay, and defenses asserted by Defendants. The Parties further recognize that the issues presented in the Action are likely only to be resolved with extensive and costly pretrial proceedings and that further litigation will cause inconvenience, distraction, disruption, delay, and expense disproportionate to the potential benefits of further litigation, and have taken into account the risk and uncertainty of the outcome inherent in any further litigation.

31. Counsel believes the settlement will also result in a substantial benefit to all five Aggrieved Employees. The Settlement was reached only after formal and informal discovery and arm's length negotiations under the guidance of a highly respected and experienced mediator appointed by this Court.

I declare under penalty of perjury under the laws of California that the foregoing is true and that this Declaration was executed on March 29, 2025, in Los Angeles, California.

DATED: March 29, 2025                NUNES LAW GROUP, APC

By: *Anthony J. Nunes*
Anthony J. Nunes, Esq., Attorneys for Plaintiffs
ANTHONY GREGG, SHAWN GRANGER, and WALLID SAAD

# EXHIBIT A

# PAGA SETTLEMENT AGREEMENT

This PAGA Settlement Agreement ("Agreement") is made by and between Plaintiffs Anthony Gregg, Shawn Granger, and Wallid Saad (collectively "Plaintiffs") and Defendants Monastery Camp, Richard Dewey, Michael LaHorgue, and William Dawson (collectively "Defendants"). The Agreement refers to Plaintiffs and Defendants collectively as "Parties," or individually as "Party."

**1.  DEFINITIONS.**

   1.1  "Action" means the Plaintiffs' PAGA lawsuit alleging wage and hour violations against Defendants captioned as *Anthony Gregg, Shawn Granger, and Wallid Saad, on behalf of themselves and all others similarly situated v. Monastery Camp, William Dawson, Richard Dewey, Michael LaHorague,[1] and DOES 1-10*, initiated on June 5, 2023, and pending in the United States District Court, Northern District of California, bearing Case No. 3:23-cv-02760-AMO.

   1.2  "Aggrieved Employee" for purposes of this settlement and Agreement only means all non-exempt valets who worked for Defendants in California during the PAGA Period and includes Plaintiff Anthony Gregg, Plaintiff Shawn Granger, and Plaintiff Wallid Saad, as well as non-plaintiffs Juan Jimenez, and Drew Curlett.

   1.3  "Approval Order" means the proposed Court Order Granting Approval of PAGA Settlement.

   1.4  "Court" means the United States District Court, Northern District of California.

   1.5  "Defendants" means named Defendants Monastery Camp, Richard Dewey, Michael LaHorgue, and William Dawson.

   1.6  "Defense Counsel" means Grant Alexander and Melissa Bell of Allen Matkins Leck Gamble Mallory & Natsis, LLP.

   1.7  "Effective Date" means the date when the Court enters a Judgment on its Order Approving the PAGA Settlement.

   1.8  "Gross Settlement Amount" means $88,500.00, which is the total amount Defendants agree to pay under the Settlement. The Gross Settlement Amount will be used to pay Individual PAGA Payments, the LWDA PAGA Payment, PAGA Counsel Fees Payment, and Representative Service Awards.

   1.9  "Judgment" means the judgment entered by the Court based upon the Court's approval of the settlement.

   1.10  "LWDA" means the California Labor and Workforce Development Agency, the agency entitled, under Labor Code section 2699, subd. (i).

---

[1]  Michael LaHorgue's surname was erroneous misspelled in the Action.

1

1.11 "LWDA PAGA Payment" means the 75% of the Net Settlement Amount paid to the LWDA under Labor Code section 2699, subd. (i).

1.12 "Net Settlement Amount" means the Gross Settlement Amount, less the following payments in the amounts approved by the Court: PAGA Counsel Fees Payment, and Representative Service Award Payments. 75% of the Net Settlement Amount is to be paid to the LWDA as the LWDA PAGA Payment and the remaining 25% of the Net Settlement Amount is to be paid to Aggrieved Employees as Individual PAGA Payments.

1.13 "PAGA Counsel" means Anthony Nunes of Nunes Law Group, APC, the attorneys representing the Plaintiffs in the Action. Nunes Law Group, APC represents Plaintiff Anthony Gregg, Plaintiff Shawn Granger, and Plaintiff Wallid Saad, as well as non-plaintiff Aggrieved Employees Juan Jimenez, and Drew Curlett.

1.14 "PAGA Counsel Fees Payment" means the amounts allocated to PAGA Counsel for reimbursement of reasonable attorneys' fees incurred to prosecute the Action.

1.15 "PAGA Pay Period" means any Pay Period during which an Aggrieved Employee worked for Defendants for at least one day during the PAGA Period.

1.16 "PAGA Period" means the period from April 25, 2022 to November 20, 2024.

1.17 "PAGA" means the Private Attorneys General Act (Labor Code §§ 2698. *et seq*.).

1.18 "PAGA Notice" means Plaintiffs' letter to Defendants and the LWDA notice pursuant to Labor Code section 2699.3, subd.(a) on or around April 25, 2023.

1.19 "PAGA Representative" means the named Plaintiffs in the Operative Complaint in the Action.

1.20 "Plaintiffs" means Anthony Gregg, Shawn Granger, and Wallid Saad, the named plaintiffs in the Action.

1.21 "Individual Settlement Payments" means the individual settlement payments to each of the three Plaintiffs for the release of their individual, non-PAGA, claims in the Action.

1.22 "Released PAGA Claims" means the claims being released by the Plaintiffs and PAGA Counsel and as described in Paragraph 5 below.

1.23 "Released Parties" means: Defendants and each of its former and present directors, officers, shareholders, owners, members, attorneys, insurers, predecessors, successors, assigns, subsidiaries, affiliates (including, but not limited to, Pomella LLC or Kitchen Hill Events LLC).

1.24 "Settlement" means the disposition of the Action effected by this Agreement and the Judgment.

2

2. **RECITALS.**

    2.1    On June 5, 2023, Plaintiffs commenced this Action by filing a Complaint alleging causes of action against Defendant Monastery Camp and then named defendants Bohemian Club and Pomella LLC for violations of the PAGA.

    2.2    On June 7, 2023, Plaintiffs filed a First Amended Complaint.

    2.3    On September 6, 2023, Defendant Monastery Camp filed its answer to the First Amended Complaint.

    2.4    On September 11, 2023, then named defendants Bohemian Club and Pomella LLC filed motions to dismiss, which the Court granted, with prejudice, on January 19, 2024.

    2.5    On May 23, 2024, after requesting and obtain leave, Plaintiffs filed a Second Amended Complaint, against Defendants for violations of the PAGA.

    2.6    The Second Amended Complaint is the operative complaint in the Action (the "Operative Complaint"). Defendants deny the allegations in the Operative Complaint, deny any failure to comply with the laws identified in in the Operative Complaint, and deny any and all liability for the causes of action alleged.

    2.7    Pursuant to Labor Code section 2699.3, subd.(a), Plaintiffs gave timely written notice to Defendants and the LWDA by sending the PAGA Notice.

    2.8    On November 20, 2024, the Parties participated in mediation with court-appointed mediator Carl Blumenstein of the Nossaman firm in San Francisco, California, which led to this Agreement to settle the Action.

    2.9    Prior to mediation, Plaintiffs obtained, through formal and informal discovery time and payroll records from Pomella, the policies and procedures from Pomella and Monastery Camp regarding the payment of wages, the provision of meal and rest breaks, timekeeping policies (including recording hours), payments made for the Aggrieved Employees from Pomella and Monastery Camp, among other information. Plaintiffs' investigation was sufficient to satisfy the criteria for court approval set forth in *Dunk v. Foot Locker Retail, Inc.* (1996) 48 Cal.App.4th 1794, 1801 *and Kullar v. Foot Locker Retail, Inc*. (2008) 168 Cal.App.4th 116, 129-130 ("*Dunk/Kullar*").

    2.10    The Parties, PAGA Counsel and Defense Counsel represent that they are not aware of any other pending litigation asserting claims that will be extinguished or affected by the Settlement.

3. **MONETARY TERMS.**

    3.1    <u>Gross Settlement Amount</u>. Defendants promise to pay $88,500.00 and no more as the Gross Settlement Amount. Defendants have no obligation to pay the Gross

Settlement Amount prior to the deadline stated in Paragraph 4.2 of this Agreement. None of the Gross Settlement Amount will revert to Defendants.

3.2  Payments from the Gross Settlement Amount. Defendants will make and deduct the following payments from the Gross Settlement Amount, in the amounts specified by the Court in the Final Approval:

    3.2.1  To PAGA Counsel: A PAGA Counsel Fees Payment of $20,000.00 . Defendants will not oppose requests for Court approval of this payment. As part of the Settlement approval motion, Plaintiffs and/or PAGA Counsel will request approval for PAGA Counsel Fees Payment. Released Parties shall have no liability to PAGA Counsel or any other Plaintiffs' Counsel arising from any claim to any portion any PAGA Counsel Fee Payment. Defendants will pay the PAGA Counsel Fees Payment. PAGA Counsel assumes full responsibility and liability for taxes owed on the PAGA Counsel Fees Payment and holds Defendants harmless, and indemnifies Defendants, from any dispute or controversy regarding any division or sharing of any of these Payments.

    3.2.2  Representative Service Awards To Plaintiffs:

    For Plaintiff Gregg a Representative Service Award of $10,000.00, in recognition of his contribution as Lead Plaintiff to the Action and service to the Aggrieved Employees. The Representative Service Award is in addition to the payment to which Plaintiff Gregg is entitled as an Aggrieved Employee or Individual Settlement Payment.

    For Plaintiff Saad a Representative Service Award of $10,000.00, in recognition of his contribution as Plaintiff to the Action and service to the Aggrieved Employees. The Representative Service Award is in addition to the payment to which Plaintiff Saad is entitled as an Aggrieved Employee or Individual Settlement Payment.

    For Plaintiff Granger a Representative Service Award of $10,000.00, in recognition of his contribution as Plaintiff to the Action and service to the Aggrieved Employees. The Representative Service Award is in addition to the payment to which Plaintiff Granger is entitled as an Aggrieved Employee or Individual Settlement Payment.

    3.2.3  Individual Settlement Payments To Plaintiffs:

    Each Plaintiff shall additionally receive an Individual Settlement Payment of $9,500.00.

    Additionally, each Plaintiff shall receive an equal share of the Net Settlement Amount less the LWDA PAGA Payment and Individual PAGA Payments in consideration for their release of their individual claims in the First through Seventh causes of action in the Operative Complaint in this

    Action for (1) Failure to Pay Minimum Wage; (2) violations of the Fair Labor Standards Act ; (3) Failure to Provide Meal Periods; (4) Failure to Provide Paid Rest Breaks; (5) Failure to Pay All Wages at Termination; (6) Failure to Provide Accurate Wage Statements; and (7) Unfair Business Practices.

  3.2.4 <u>To the LWDA and Aggrieved Employees:</u> PAGA penalties to be paid from the Net Settlement Amount ($10,000.00), with 75% allocated to the LWDA PAGA Payment ($7,500.00) and 25% allocated to the Individual PAGA Payments ($2,500) for the approximately forty-five (45) pay periods during the Liability Period (a PAGA payment of $222.22 per pay period worked).

  3.2.5 Defendants maintain that Defendants did not employ any Plaintiffs or Aggrieved Employees. The Parties agree that records do not exist to identify the exact number of workdays or pay periods were worked by each Plaintiff and Aggrieved Employee. Without records available to precisely allocated based on pay periods worked, the Parties agree to equally split the $2,500 among the five Plaintiffs and Aggrieved Employees.

  3.2.6 Plaintiffs and Aggrieved Employees assume full responsibility and liability for any taxes owed on their Individual PAGA Payment.

**4. SETTLEMENT FUNDING AND PAYMENTS.**

 4.1 <u>Funding of Gross Settlement Amount</u>. Defendants shall fully fund the Gross Settlement Amount by transmitting the funds to Plaintiffs' counsel no later than 14 days after the Effective Date.

 4.2 <u>Payments from the Gross Settlement Amount</u>. Within 14 days after Defendants fund the Gross Settlement Amount, Plaintiffs' counsel will mail checks for all Individual PAGA Payments, the LWDA PAGA Payment, Individual Settlement Payments, and Representative Service Awards.

  4.2.1 Plaintiffs' counsel will send the checks for the Individual PAGA Payments to the Aggrieved Employees.

  4.2.2 Plaintiffs' counsel will send the checks for the Individual Settlement Payments and Representatives Service Awards to the Plaintiffs.

  4.2.3 Plaintiffs' Counsel will send the LWDA PAGA Payment check to the LWDA.

  4.2.4 The payment of Individual PAGA Payments shall not obligate Defendants to confer any additional benefits or make any additional payments to the Aggrieved Employees (such as 401(k) contributions or bonuses) beyond those specified in this Agreement.

5

**5. RELEASES OF CLAIMS**. Effective on the date when Defendants fully fund the entire Gross Settlement Amount, Plaintiffs, the State of California, and the Aggrieved Employees will release claims against all Released Parties as follows:

5.1 <u>Release by Plaintiffs, the State of California, and the Aggrieved Employees:</u> Plaintiffs, the State of California, and all Aggrieved Employees are deemed to release, on behalf of themselves and their respective former and present representatives, agents, attorneys, heirs, successors, and assigns, the Released Parties from all claims for PAGA penalties that were alleged, or reasonably could have been alleged, based on the PAGA Period facts stated or which could have reasonably have been alleged in the Operative Complaint and the PAGA Notice including, e.g., failure to pay minimum wage; violation of the Fair Labor Standards Act; failure to provide meal periods; failure to provide paid rest breaks; failure to pay all wages at termination; failure to provide accurate wage statements; and unfair business practices. These include all claims under Labor Code sections 201-204, 226, 226.7, 226.8, 510, 512, 1174, 1174.5, 1182.12, 1194, 1197, 1197.1, 1198, 1199, and 2802, et seq., and the applicable IWC Wage Orders, 29 U.S.C. 201, et seq., and California Business and Professions Code section 17200, et seq.

5.2 <u>Release by Named Plaintiffs</u>: Plaintiffs additionally acknowledge their release of any and all actual or potential actions, claims, causes of action, and damages, known or unknown, whether or not on account of or arising out of Plaintiffs' relationship with Defendants. In this regard, Plaintiffs expressly waive the provisions of Section 1542 of the California Civil Code, which states:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Furthermore, Plaintiffs hereby expressly waive and relinquish any rights and benefits they may have under other statutes or common law principles of similar effect. Claimants understand that the facts under which they each give this full and complete release and discharge of the Released Parties may hereafter prove to be different than now known or believed by them and they hereby accept and assume the risk thereof and agree that each of their full and complete release and discharge of Released Parties shall remain effective in all respects and not be subject to termination, rescission, or modification by reason of any such difference in facts.

**6. MOTION OR APPLICATION FOR APPROVAL OF SETTLEMENT**. The Parties agree to jointly prepare and file an application or motion for approval of this Settlement.

6.1 <u>Plaintiffs' Responsibilities</u>. Plaintiffs will prepare and deliver to Defense Counsel all documents necessary for obtaining approval of this Settlement under Labor Code Section 2699, subd. (f)(2)), including (i) a draft proposed Order Granting Approval of PAGA Settlement; and (ii) a signed declaration from PAGA Counsel firm attesting to its timely transmission to the LWDA of all necessary PAGA

6

    documents (initial notice of violations (Labor Code section 2699.3, subd. (a)), Operative Complaint (Labor Code section 2699, subd. (l)(1)), this Agreement (Labor Code section 2699, subd. (l)(2)). In their Declarations, Plaintiffs and PAGA Counsel shall aver that they are not aware of any other pending litigation asserting claims that will be extinguished or adversely affected by the Settlement.

  6.2 <u>Responsibilities of PAGA Counsel</u>.  PAGA Counsel and Defense Counsel are jointly responsible for expeditiously finalizing and filing the application or motion for approval of this Settlement no later than 30 days after the full execution of this Agreement and, if necessary, obtaining a prompt hearing date for the motion and appearing in Court to advocate in favor of the motion.  PAGA Counsel is responsible for delivering the settlement funds to the LWDA, Plaintiffs, and Aggrieved Employees.

  6.3 <u>Duty to Cooperate</u>.  If the Parties disagree on any aspect of the proposed application or motion for approval of this Settlement and/or the supporting declarations and documents, PAGA Counsel and Defense Counsel will expeditiously work together on behalf of the Parties by meeting in person or by telephone, and in good faith, to resolve the disagreement.  If the Court does not grant the motion for approval of this Settlement or conditions its approval on any material change to this Agreement, PAGA Counsel and Defense Counsel will expeditiously work together on behalf of the Parties by meeting in person or by telephone, and in good faith, to modify the Agreement and otherwise satisfy the Court's concerns.

**7. AGGRIEVED EMPLOYEE SIZE ESTIMATES**

  7.1 Based on their records, Defendants estimate that, as of November 20, 2024, the Aggrieved Employees worked approximately forty-five (45) Pay Periods during the PAGA Period.

**8. <u>CONTINUING JURISDICTION OF THE COURT</u>**.  The Parties agree that, after entry of Judgment, the Court will retain jurisdiction over the Parties, Action, and the Settlement solely for purposes of (i) enforcing this Agreement and/or Judgment, (ii) addressing settlement administration matters, and (iii) addressing such post-Judgment matters as are permitted by law.

  8.1 <u>Waiver of Right to Appeal</u>.  Provided the Judgment is consistent with the terms and conditions of this Agreement, specifically including the PAGA Counsel Fees Payment, the Parties, their respective counsel waive all rights to appeal from the Judgment, including all rights to post-Judgment and appellate proceedings, the right to file motions to vacate Judgment, motions for new trial, extraordinary writs, and appeals.  The waiver of appeal does not include any waiver of the right to oppose such motions, writs or appeals.  If another party appeals the Judgment, the Parties' obligations to perform under this Agreement will be suspended until such time as the appeal is finally resolved and the Judgment becomes final, except as to matters that do not affect the amount of the Net Settlement Amount.

      8.2      Appellate Court Orders to Vacate, Reverse, or Materially Modify Judgment.  If the reviewing Court vacates, reverses, or modifies the Judgment in a manner that requires a material modification of this Agreement (including, but not limited to, the scope of release to be granted by Aggrieved Employees), this Agreement shall be null and void.  The Parties shall nevertheless expeditiously work together in good faith to address the appellate court's concerns and to obtain approval of the Settlement and entry of Judgment.  An appellate decision to vacate, reverse, or modify the Court's award of any payments to PAGA Counsel shall not constitute a material modification of the Judgment within the meaning of this paragraph, as long as the Gross Settlement Amount remains unchanged.

**9.    ADDITIONAL PROVISIONS.**

      9.1      No Admission of Liability or Representative Manageability for Other Purposes.  This Agreement represents a compromise and settlement of highly disputed claims.  Nothing in this Agreement is intended or should be construed as an admission by Defendants that any of the allegations in the Operative Complaint have merit or that Defendants have any liability for any claims asserted; nor should it be intended or construed as an admission by Plaintiffs that Defendants' defenses in the Action have merit.  The Parties agree that representative treatment is for purposes of this Settlement only.  If, for any reason the Court does not approve this Settlement, Defendants reserve all available defenses to the claims in the Action, and Plaintiffs reserve the right to contest Defendants' defenses.  The Settlement, this Agreement and Parties' willingness to settle the Action will have no bearing on, and will not be admissible in connection with, any litigation (except for proceedings to enforce or effectuate the Settlement and this Agreement).

      9.2      Integrated Agreement.  Upon execution by all Parties and their counsel, this Agreement shall constitute the entire agreement between the Parties relating to the Settlement, superseding any and all oral representations, warranties, covenants, or inducements made to or by any Party.

      9.3      Attorney Authorization.  PAGA Counsel and Defense Counsel separately warrant and represent that they are authorized by Plaintiffs and Defendants, respectively, to take all appropriate action required or permitted to be taken by such Parties pursuant to this Agreement to effectuate its terms, and to execute any other documents reasonably required to effectuate the terms of this Agreement including any amendments to this Agreement.

      9.4      Cooperation.  The Parties and their counsel will cooperate with each other and use their best efforts, in good faith, to implement the Settlement by, among other things, modifying the Settlement Agreement, submitting supplemental evidence and supplementing points and authorities as requested by the Court.  In the event the Parties are unable to agree upon the form or content of any document necessary to implement the Settlement, or on any modification of the Agreement that may become necessary to implement the Settlement, the Parties will seek the assistance of a mediator and/or the Court for resolution.

9.5 <u>No Prior Assignments</u>.  The Parties separately represent and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity and portion of any liability, claim, demand, action, cause of action, or right released and discharged by the Party in this Settlement.

9.6 <u>No Tax Advice</u>.  Neither Plaintiffs, PAGA Counsel, Defendants, nor Defense Counsel are providing any advice regarding taxes or taxability, nor shall anything in this Settlement be relied upon as such within the meaning of United States Treasury Department Circular 230 (31 CFR Part 10, as amended) or otherwise.

9.7 <u>Modification of Agreement</u>.  This Agreement, and all parts of it, may be amended, modified, changed, or waived only by an express written instrument signed by all Parties or their representatives, and approved by the Court.

9.8 <u>Agreement Binding on Successors</u>.  This Agreement will be binding upon, and inure to the benefit of, the successors of each of the Parties.

9.9 <u>Applicable Law</u>.  All terms and conditions of this Agreement will be governed by and interpreted according to the internal laws of the state of California, without regard to conflict of law principles.

9.10 <u>Cooperation in Drafting</u>. The Parties have cooperated in the drafting and preparation of this Agreement.  This Agreement will not be construed against any Party on the basis that the Party was the drafter or participated in the drafting.

9.11 <u>Confidentiality</u>.  To the extent permitted by law, all agreements made, and orders entered during Action and in this Agreement relating to the confidentiality of information shall survive the execution of this Agreement.

9.12 <u>Use and Return of Aggrieved Employee Data</u>.  Information provided to PAGA Counsel pursuant to Cal. Evid. Code §1152, and all copies and summaries of the PAGA Data provided to PAGA Counsel by Defendants in connection with the mediation, other settlement negotiations, or in connection with the Settlement, may be used only with respect to this Settlement, and no other purpose, and may not be used in any way that violates any existing contractual agreement, statute, or rule of court.

9.13 <u>Headings</u>.  The descriptive heading of any section or paragraph of this Agreement is inserted for convenience of reference only and does not constitute a part of this Agreement.

9.14 <u>Calendar Days</u>.  Unless otherwise noted, all reference to "days" in this Agreement shall be to calendar days.  In the event any date or deadline set forth in this Agreement falls on a weekend or federal legal holiday, such date or deadline shall be on the first business day thereafter.

9.15 <u>Execution in Counterparts</u>.  This Agreement may be executed in one or more counterparts by facsimile, electronically (i.e. DocuSign), or email which for purposes of this Agreement shall be accepted as an original.  All executed counterparts and each of them will be deemed to be one and the same instrument if counsel for the Parties will exchange between themselves signed counterparts.  Any executed counterpart will be admissible in evidence to prove the existence and contents of this Agreement.

9.16 <u>Stay of Litigation</u>.  The Parties agree that upon the execution of this Agreement the litigation shall be stayed, except to effectuate the terms of this Agreement.

Dated: 2/12/2025

_____
Plaintiff ANTHONY GREGG

Dated: 2/12/2025

_____
Plaintiff SHAWN GRANGER

Dated: 2/12/2025

_____
Plaintiff WALLID SAAD

Dated: _____

_____
Its: _____
 For Defendant MONASTERY CAMP

Dated: _____

_____
Defendant RICHARD DEWEY

Dated: _____

_____
Defendant MICHAEL LAHORGUE

Dated: _____

_____
Defendant WILLIAM DAWSON

Dated: February 11, 2025

**NUNES LAW GROUP, APC**

_Anthony J. Nunes_
Anthony J. Nunes, Esq.
Attorneys for Plaintiffs

Dated: _____

**ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP**

_____
Grant P. Alexander, Esq.
Melissa K. Bell, Esq.
Attorneys for Defendants

10

9.15    <u>Execution in Counterparts</u>. This Agreement may be executed in one or more counterparts by facsimile, electronically (i.e. DocuSign), or email which for purposes of this Agreement shall be accepted as an original. All executed counterparts and each of them will be deemed to be one and the same instrument if counsel for the Parties will exchange between themselves signed counterparts. Any executed counterpart will be admissible in evidence to prove the existence and contents of this Agreement.

9.16    <u>Stay of Litigation</u>. The Parties agree that upon the execution of this Agreement the litigation shall be stayed, except to effectuate the terms of this Agreement.

Dated: _____  
                                             Plaintiff ANTHONY GREGG

Dated: _____  
                                             Plaintiff SHAWN GRANGER

Dated: _____  
                                             Plaintiff WALLID SAAD

Dated: 2/10/2025  
                                             Its: Co-Captain  
                                             For Defendant MONASTERY CAMP

Dated: 2/10/2025  
                                             Defendant RICHARD DEWEY

Dated: 2/7/2025  
                                             Defendant MICHAEL LAHORGUE

Dated: 2/6/2025  
                                             Defendant WILLIAM DAWSON

Dated: _____  
                                             **NUNES LAW GROUP, APC**

                                             Anthony J. Nunes, Esq.  
                                             Attorneys for Plaintiffs

Dated: 2/7/2025  
                                             **ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP**

                                             Grant P. Alexander, Esq.  
                                             Melissa K. Bell, Esq.  
                                             Attorneys for Defendants